**Marilyn DAY, Plaintiff, Appellee,**

v.

**J. BRENDAN WYNNE, D.O., INC., Defendant, Appellant.**

**No. 82–1674.**

United States Court of Appeals, First Circuit.

Argued Jan. 31, 1983.
Decided March 8, 1983.

Robert J. Quigley, Jr., Providence, R.I., with whom Higgins, Cavanagh & Cooney, Providence, R.I., was on brief, for defendant, appellant.

Guy J. Wells, Providence, R.I., with whom Gunning, LaFazia & Gnys, Inc., Providence, R.I., was on brief, for plaintiff, appellee.

Before ALDRICH, BOWNES and BREYER, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

On July 25, 1974 plaintiff Marilyn Day sustained a broken leg as a result of an accident while a guest in an automobile driven by one Finck in the state of Rhode Island. She was treated by Dr. J. Brendan Wynne, an employee and officer of J. Brendan Wynne, D.O., Inc., a Rhode Island professional corporation. It was a difficult break, an oblique fracture with angulation, and Dr. Wynne advised plaintiff as to two methods of repair. She chose a closed reduction procedure that would result in no scarring, requiring contact to be maintained with a long leg cast while knitting. The procedure did not turn out well. The end result was a bowing of the leg, and a one inch shortening.

Plaintiff sued Finck in the Rhode Island state court. She testified in the present case that she was living in California and that her attorney advised her that $25,000 was the maximum available under Finck's insurance policy. On May 24, 1979 she gave Finck a general release in return for $22,-000, discharging "said payor ... from all claims and demands arising out of ... an accident which happened on or about the 26th day of July 1974."

Meanwhile, in July, 1978 plaintiff sued defendant J. Brendan Wynne, D.O., Inc. for malpractice in the United States District Court for the District of Rhode Island. By that time Dr. Wynne had taken employment at the Philadelphia College of Osteopathic Medicine. Pursuant to an order of court on July 25, 1978, counsel made service of process on the corporation by certified mail, return receipt requested, addressed to J. Brendan Wynne, D.O., at the College. An affidavit of compliance was filed, but counsel neglected to file with the court the return receipt card. Counsel did receive such a card; however, the signature was difficult to read and did not appear to be that of Dr. Wynne. Defendant having filed no response to the complaint, plaintiff filed an affidavit of failure to plead and application for entry of default on May 26, 1981, together with the return receipt card. Default was entered and a copy mailed to Dr. Wynne. Defendant then filed a motion to set aside the default, asserting that process had never been received. When this motion was granted, defendant moved to dismiss the action for lack of service. That motion was denied.

On this appeal defendant presses the motion to dismiss, asserts error in the court's refusal to direct a verdict in its favor on the basis of the release, and makes various other complaints. We affirm.

■ While it is oversimplistic to state that the purpose of process is simply to notify the defendant of the commencement of the action, notice, constitutionally, is the primary purpose. *Mullane v. Central Hanover Bank & Trust Co.,* 1950, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657–58, 94 L.Ed. 865; *Milliken v. Meyer,* 1940, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278. Indeed, as the Court indicated in these opinions, due process requires only a procedure that is reasonably calculated to achieve notice, and, if such is adopted, successful achievement is not necessary. Thus, where a foreign defendant who was doing business within the state was sent process by registered mail, return receipt requested (and received back), but who denied actual receipt of the letter, due process was held satisfied. *See Jardine, Gill & Duffus, Inc. v. M/V CASSIOPEIA,* D.Md., 1981, 523 F.Supp. 1076. It may well be that that case is correct, but certainly there could be no constitutional question here when, after actual notice, the court leaned over backwards by permitting defendant to remove the default. *Cf. York v. Texas,* 1890, 137 U.S. 15, 11 S.Ct. 9, 34 L.Ed. 604. No real claim was made that the order itself was not complied with, and thus, in the absence of any constitutional problem, the motion to dismiss was properly denied.

With respect to the release, defendant correctly contends that Finck's liability, if any, for the initial accident would extend, through ordinary principles of proximate cause, to include the negligence of the treating physician. *See Roberts v. Kettelle,* R.I., 1976, 116 R.I. 283, 356 A.2d 207, 215;

*Selby v. Kuhns,* 1963, 345 Mass. 600, 602, 188 N.E.2d 861. Such liability, so far as Finck was concerned, was necessarily covered by the release. Whether defendant's liability therefore was also included is a different matter. The issue has never been squarely passed upon by the Rhode Island courts. The older general view, giving comprehensive consequence to a general release, would regard the doctor as a beneficiary. More recent cases hold otherwise. *E.g., Selby v. Kuhns,* ante; *Smith v. Conn,* Iowa, 1968, 163 N.W.2d 407. Defendant offers no reason for faulting the district court's conclusion that Rhode Island would take the modern approach. Moreover, under Rhode Island positive law,

> "A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release . . . ."
> R.I.Gen.Laws § 10-6-7.

Since both the defendant and Finck were liable for any injury caused to plaintiff by the malpractice of defendant, the two are deemed joint tortfeasors under section 10-6-2, which provides that,

> "For the purposes of this chapter the term 'joint tortfeasors' means two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them . . . ."

That this definition of joint tortfeasors, and the chapter as a whole, intentionally changes the common law is made clear by *Smith v. Raparot,* R.I., 1967, 101 R.I. 565, 225 A.2d 666.

■ Rhode Island cases on releases in general support the view that a release of one party does not release unidentified third parties, at most holding the matter to be one of intent of the signatories. *See Lennon v. MacGregor,* R.I., 1980, 423 A.2d 820. Here the release on its face only applied to Finck, and thus could only inure to defendant's benefit if as matter of law it

was a bar. Without needing to decide whether section 10-6-7 compelled the reverse rule of law applied by the court below in the case of successive tortfeasors, we conclude that the court did not err in ruling that the prior release was not a bar to the present action as to defendant's portion.

■ The defendant alternatively claims that plaintiff impermissibly received double recovery because no evidence of any injury uncompensated by the prior release was offered by plaintiff. The court permitted evidence on the Finck settlement to come in, and fully instructed the jury that the burden was on the plaintiff to persuade it to find only those additional damages which plaintiff had suffered due to defendant's negligence, if any; namely, beyond what she would have suffered as a result of the accident had there been no negligence by the physician. There was competent testimony by a Dr. Zecchino that supported the jury's finding that defendant's negligence did cause plaintiff injury beyond that caused by the original accident. The court was also clear in its charge that the jury could "award plaintiff damages in this action only for injuries, if any, resulting from Dr. Wynne's negligence, *for which she was not compensated in the former settlement.*" (emphasis added.) Thus, even though plaintiff's testimony supported the view that the prior settlement did compensate plaintiff for at least some of the injury she suffered as a result of Dr. Wynne's negligence, any possibility of double recovery was avoided by the court's charge.

■ We cannot tell from the record what special verdict form was given to the jury, but it appears that it was a writing and that the jury's answer was "Defendant guilty in his breach of duty to the plaintiff. The jury awards the plaintiff the amount of $50,000 for mental suffering." Plaintiff was 23 years old at the time of the accident, and the evidence was that her injuries attributable to Dr. Wynne's negligence would permanently cause her pain and suffering. Although mental suffering is perhaps not the term we would have chosen, the jury was entitled to use this term to represent

the injuries not already compensated for by the release. Indeed, where double recovery was a problem in the case, and the jury had been instructed to separate out the injury both attributable to Dr. Wynne's negligence and uncompensated for, the jury's language was a commendable effort at clarity.

■ As to defendant's remaining argument that the court incorrectly precluded defendant from going into the facts of the original accident, the relevance of such an inquiry was marginal, at best, and the court's error, if any, was harmless.

*Affirmed.*