Patricia J. McINNIS, Plaintiff, Appellee,

v.

A.M.F., INC., et al.,
Defendants, Appellants.

Patricia J. McINNIS,
Plaintiff, Appellant,

v.

A.M.F., INC., et al.,
Defendants, Appellees.

Nos. 84–1657, 84–1658.

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1985.

Decided June 13, 1985.

Rehearing and Rehearing En Banc
Denied July 23, 1985.

Gerald C. DeMaria, Providence, R.I., with whom Robert J. Quigley, Jr. and Higgins, Cavanagh & Cooney, Providence, R.I., were on brief for A.M.F., Inc.

Martin W. Aisenberg, Providence, R.I., for Patricia McInnis.

Before BREYER and ALDRICH, Circuit Judges, and PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

The plaintiff in a products liability action here appeals a jury verdict in favor of the defendants. The plaintiff, Patricia McInnis, sued the defendants A.M.F., Inc. and Harley-Davidson, alleging that she had sustained an amputating injury to her left leg due to the defective design of a motorcycle sold by the defendants. The plaintiff now seeks reversal of the jury's verdict, asserting that the district court judge made a number of rulings during the trial which constituted prejudicial error. The defendants have also filed a cross appeal challenging the trial court's denial of their motion for a directed verdict. The most compelling issues presented by this appeal are first, whether the trial court erred in admitting certain evidence that the plaintiff had consumed alcohol prior to her debilitating accident and second, whether the court erred in admitting, as relevant to the issue of causation, evidence of the plaintiff's settlement with a third party joint tortfeasor.[1]

---

* Of the District of Rhode Island, sitting by designation.

1. The plaintiff/appellant alleges a number of erroneous rulings as grounds for granting a new trial. Specifically they claim that the trial judge erred in 1) permitting the defendants to introduce evidence that was allegedly inconsistent with the defendants' response to the plaintiff's request for admissions; 2) in denying the plaintiff's request to present an expert anatomist as a rebuttal witness; 3) in refusing to allow certain

We find that the trial court erred with respect to the second evidentiary ruling, and that the error was sufficiently prejudicial to warrant a new trial.

## BACKGROUND

This case arose out of a motorcycle/automobile accident that occurred on April 16, 1982 at the intersection of Route 146A and Main Street in North Smithfield, Rhode Island. At approximately 3 p.m., the plaintiff, Patricia McInnis, was driving a Harley-Davidson motorcycle southbound on Route 146A. An automobile driven by Florence Poirier was approaching northbound toward the plaintiff on the same road. At the time McInnis entered the intersection, Poirier was apparently preparing to make a left turn onto Main Street; the car's left turn signal was on and the vehicle was moving very slowly toward the yellow line. As the plaintiff proceeded through the intersection, Poirier turned left, striking the left side of the motorcycle.[2] After the impact, the motorcycle "fishtailed" for a short distance while the plaintiff apparently attempted to regain control, before it fell on its side. As a result of this accident, McInnis' left leg was almost completely severed at the ankle. Due to the extensive damage to the limb, the plaintiff's doctor amputated it below the knee.

Shortly after the accident, Patricia McInnis filed an insurance claim against Mrs. Poirier through her liability insurance carrier Aetna Casualty and Surety Company. In November of 1981, McInnis settled her claim by executing a general release explicitly releasing Florence Poirier from liability for the August 16 accident.[3] In exchange for the release, McInnis received $60,000, which was the extent of Mrs. Poirier's insurance coverage.

On June 28, 1982, the plaintiff filed suit against A.M.F., Inc., and its wholly owned subsidiary Harley-Davidson Motor Company, Inc., the manufacturers of the motorcycle Miss McInnis had been driving at the time of the accident. She asserted that the defendants were liable for her injuries on theories of negligent design of the motorcycle's clutch housing, negligent failure to warn, and strict products liability. Specifically, plaintiff claimed that when Poirier

---

opinion testimony on causation from plaintiff's treating physician. The evidentiary rulings of a trial court will not be upset unless they involve an abuse of discretion. *See Berrios Rivera v. British Ropes, Ltd.*, 575 F.2d 966, 969 (1st Cir. 1978). Because we find no such abuse in any of the cited rulings, we hold that they shall stand.

In addition, the plaintiff alleges that the trial judge erred in refusing to instruct the jury that a manufacturer is held to the level of knowledge of an expert in the field, and in denying plaintiff's motion to amend its complaint to add Harley-Davidson, Inc. as a party defendant. After careful consideration, we find these contentions to be without merit.

**2.** Although the precise point of impact on the motorcycle was a crucial disputed fact throughout the trial, there appears from the record to be no dispute that the left front side of Poirier's vehicle made contact with the left side of the motorcycle.

**3.** That release stated in its entirety:
Know all men by these presents, that I, Patricia McInnis for the sole consideration of $60,000.00 Dollars, to me in hand paid by Florence Poirier have released and discharged, and by these presents do for myself, my heirs, executors, administrators and assigns, release and forever discharge said Florence Poirier and all other persons, firms or corporations from all claims, demands, damages, actions or causes of action, on account of damage to property, bodily injuries or death resulting or to result, from an accident to Patricia McInnis which occurred on or about the 16th day of August, 1981, by reason of auto motorcycle accident on 146A and Main Street, No. Smithfield, RI, or in equity, which I, my heirs, executors, administrators or assigns can, shall, or may have for reasons of any matter, cause or thing whatsoever prior to the date hereof.

It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected.

It is further understood and agreed that any party hereby released admits no liability to the undersigned or any others, shall not be estopped or otherwise barred from asserting, and expressly reserves the right to assert any claim or cause of action such party may have against the undersigned or any others.

In witness whereof, I have hereunto set my hand and seal this 6th day of November, 1981.

(s) Patricia A. McInnis

struck her motorcycle, it fell on its left side where the clutch housing is located. When it fell, she argued, the clutch housing shattered, exposing her leg to the sharp jagged edges and whirring gears which caused the almost complete severance of her limb. A.M.F. and Harley-Davidson defended the action in part on the theory that the plaintiff's severe injury was actually and immediately caused by the impact with the bumper of the Poirier vehicle, and had already occurred before the motorcycle fell.

Prior to trial, the defendants moved the court to enter summary judgment in their favor. They argued that under Rhode Island law, the general release executed by the plaintiff had not only the effect of releasing Mrs. Poirier, but of releasing all joint tortfeasors as well. Concomitantly, there would be no material facts to be resolved by a jury. The trial judge withheld ruling on the motion pending a jury verdict.

From a reading of the transcript, the evidence presented at trial focused on two major issues. The first was the issue of causation—specifically whether it was the impact with the Poirier vehicle or the shattering of the motorcycle clutch housing that in fact caused the amputating injury to plaintiff's leg. The second issue was whether the defendants' motorcycle, the Harley-Davidson Super Glide, was uncrashworthy and as such, negligently designed. As we shall discuss at greater length later in this opinion, the trial transcript is replete with evidence on these issues presented by both parties to the litigation. The plaintiff and the defendants presented the testimony of medical experts, accident reconstructionists, engineers, and eye witnesses. Their attorneys vigorously argued their respective positions. Having heard the evidence and the arguments and having been instructed in the law by the trial judge, the jury returned a general verdict, without the aid of interrogatories, in favor of the defendants.

Upon entry of the verdict, the attorneys for the defendants moved for a directed verdict. Their motion was premised on the identical legal argument they had advanced in support of their previous motion for summary judgment—that as a matter of law, the plaintiff's general release of Mrs. Poirier likewise released the defendants as joint tortfeasors. Apparently because the jury had found for the defendants, the trial judge denied the motion on the ground that it was moot.

OUR REVIEW

We shall first address the propriety of the trial court's evidentiary rulings and whether any error which might have been committed constitutes grounds for a new trial.

*A. Admission of Evidence of Drinking*

The plaintiff alleges that the trial court committed prejudicial error in permitting the defendants to introduce evidence that the plaintiff had consumed alcoholic beverages on the day of the accident. On January 20, 1984, one month before the trial began, the plaintiff filed a motion in limine to bar the defendants from introducing such evidence. In support of its motion, the plaintiff invoked the Rhode Island Supreme Court's decision in *Handy v. Geary,* 105 R.I. 419, 252 A.2d 435 (2969), which held that it is prejudicial error for a trial court to admit evidence of drinking to prove negligence in the absence of evidence of actual intoxication. *Id.,* 252 A.2d at 441. *Handy* prescribed a procedure whereby the judge would be required to conduct an evidentiary hearing on the issue of intoxication in the absence of the jury before he could admit evidence of mere consumption of alcohol. *Id.* at 442.

At the time plaintiff filed its motion in limine, the defendants offered no evidence of either drinking or intoxication. Accordingly, the trial court granted the motion. Trial Transcript, p. 23. During their cross examination of Patricia McInnis at trial, however, defense counsel attempted to question her as to whether she had consumed three beers prior to the motorcycle crash. The line of inquiry was based on Massachusetts General Hospital's records of plaintiff's admission on the day of the

accident. According to the records, the plaintiff had reported drinking three beers that day, and that she had eaten nothing since the previous evening. The plaintiff's attorney objected to the question on the basis of the court's prior ruling on the motion in limine.

The trial judge reversed his previous ruling and allowed the defendants' line of questioning. He found that the medical reports, standing alone, furnished sufficient evidence to permit reasonable jurors to find the plaintiff was intoxicated as defined in *Handy v. Geary*.[4] In the alternative, the Court noted that if the federal rather than the state rule were controlling, the evidence would still be admissible under Fed.Rule of Evid. 403, since its probative value was not outweighed by its potential prejudicial effect. Trial Transcript, p. 292–93.

The plaintiff appeals this ruling on two grounds. First, she argues that the trial judge was obligated to follow both the substantive and procedural standards set forth in *Handy v. Geary*. She claims that the judge's failure to hold a full evidentiary hearing on the issue of intoxication was therefore error. In addition, the plaintiff indicates that *Handy* requires independent evidence of intoxication, beyond the fact of drinking, before the trial judge may submit the issue to the jury. She claims that because there was no such evidence in this case, admission of the evidence of drinking was improper as a matter of law. Second, the plaintiff's attorneys assert that the trial court prejudiced McInnis by reversing its original ruling on the motion in limine after they had concluded their direct examination of her. They assert that they had deliberately refrained from raising the issue of

alcohol in reliance on the ruling. By allowing defense counsel to bring out those facts for the first time on cross-examination, they argue, the trial judge committed prejudicial error since the testimony heard in that context would inevitably convey an impression to the jury that McInnis had been dishonest or furtive about drinking when she was examined by her own attorneys.

■ As to the plaintiff's first argument, we hold that the trial judge was bound by the Federal Rules of Evidence rather than the state evidentiary rule judicially fashioned in *Handy v. Geary*. Accordingly, we need not decide whether the judge substantially complied with the procedures prescribed in that case or correctly interpreted its mandate.

■ The Federal Rules of Evidence are properly characterized as "housekeeping rules for federal courts." Congress' authority to prescribe such rules, even though they may differ from comparable state rules, has long been recognized. *Hanna v. Plumer*, 380 U.S. 460, 471, 473, 85 S.Ct. 1136, 1144, 1145, 14 L.Ed.2d 8 (1965). Of course, federal courts and Congress are constitutionally precluded from displacing state substantive law with federal substantive rules in diversity actions. *See generally, Erie R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). But federal rules purporting to govern procedural matters, which are duly passed by Congress, shall be presumed constitutionally valid unless they cannot rationally be characterized as rules of procedure. *See Hanna*, 380 U.S. at 471, 85 S.Ct. at 1144.

**4.** According to *Handy v. Geary*,
[i]ntoxication comprehends a situation where, by reason of drinking intoxicants an individual does not have the normal use of his physical or mental faculties, thus rendering him incapable of acting in a manner in which an ordinarily prudent and cautious man, in full possession of his faculties, using reasonable care, would act under like conditions.
*Handy v. Geary*, 252 A.2d at 441, citing *State v. Hightower*, 238 La. 876, 116 So.2d 699.

The trial judge in the instant case concluded that under the particular circumstances, the evidence of drinking alone permitted a reasonable inference of intoxication. He found that a record stating that the defendant had consumed three beers, having had nothing to eat since the previous evening compelled a conclusion that her ability to operate a motor vehicle could have been impaired. Trial Transcript, p. 273.

Congress clearly intended that the Federal Rules of Evidence would apply to diversity actions. *See* Fed.R.Evid. 1101(b) (rules apply generally to civil and criminal proceedings). This conclusion is underscored by the fact that where Congress deemed it desirable for state rules to be applied in diversity actions, it created a special proviso to that effect in the federal rule. Rule 501, for example, provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with state law." Fed.R.Evid. 501. The only question remaining, therefore, is whether Rule 403 may rationally be characterized as a procedural provision. We think it too obvious to warrant discussion that the rule survives the application of this deferential standard.[5]

Our conclusion is. supported by the weight of authority from other federal courts addressing similar issues. Federal Rule of Evidence 407, another relevancy provision, has been held applicable to diversity cases by several circuits. *See, e.g., Flaminio v. Honda Motor Co., Ltd.*, 733 F.2d 463 (7th Cir.1984); *Grenada Steel Industries v. Alabama Oxygen Co.*, 695 F.2d 883, 885 (5th Cir.1983); *Gibbs v. State Farm Mutual Ins. Co.*, 544 F.2d 423, 428 n. 2 (9th Cir.1976). *See also, In Re Air Crash Disaster*, 701 F.2d 1189, 1193 (7th Cir.1983) (holding generally that the Federal Rules of Evidence apply in diversity

cases); *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1153 (5th Cir.1981). In addition, in *Levitt v. Jefferies, Inc.*, 517 F.2d 523 (7th Cir.1975) (rehearing en banc), the Seventh Circuit concluded that Federal Rule of Evidence 403. should govern the admissibility of evidence of drinking notwithstanding a state rule, very similar to the one formulated in *Handy v. Geary*, which would have excluded it. *See id.* at 527.[6]

In spite of the general applicability of the Federal Rules of Evidence to diversity actions, it is well recognized that Congress did not intend the rules to preempt so-called "substantive" state rules of evidence such as the parole evidence rule, the collateral source rule, or the Statute of Frauds. Although the application of these rules will affect the admissibility of certain evidence, they in reality serve substantive state policies regulating private transactions. 19 Wright, Miller and Cooper § 4512. *See Mohr v. Metro East Manufacturing Co.*, 711 F.2d 69, 72 (7th Cir.1983) ("Although the parole evidence rule has a procedural name, it is in fact a rule of contract formation...."). The plaintiff argues that the *Handy v. Geary* rule is in the nature of such a substantive rule, and as such, must be applied in diversity cases. We find it simply cannot be so characterized. First, a comparison of the state rule with Federal Rule of Evidence 403 reveals that they are both rules of evidentiary relevance. They endeavor to reach almost identical results—to provide for the exclusion of relevant evidence where its prejudicial impact potentially outweighs its probative value.

---

**5.** The Court in *Hanna* formulated this test to analyze the constitutional validity of the Federal Rules of Civil Procedure. We believe the test to be·fully applicable to the Federal Rules of Evidence as well. *See also Rioux v. Daniel International Corp.*, 582 F.Supp. 620 (D.Me.1984); *French v. Fleet Carrier Corp.*, 101 F.R.D. 369 (D.Me.1984). In fact, we believe that the presumption of validity may be even stronger in the case of the Federal Rules of Evidence, since unlike the rules of civil procedure, they were actually written rather than merely approved by Congress. *See Rioux*, 582 F.Supp. at 624–25.

**6.** We observe that the Third Circuit fairly recently has reached a contrary conclusion in *Rovegno v. Geppert Bros., Inc.*, 677 F.2d 327 (3d Cir.1982). *Id.* at 329. *Rovegno* relied on a prior decision of that same court, *Greiner v. Volkswagenwerk Aktiengesellschaft*, 540 F.2d 85, 89 (3d Cir.1976), to hold that *Erie* required the application of a Pennsylvania rule governing the admissibility of blood alcohol tests to prove contributory negligence. *Rovegno*, 677 F.2d at 329. We reject the holdings of those cases, and respectfully believe that they failed to acknowledge the mandate of the United States Supreme Court in *Hanna v. Plumer.*

*Handy*, 252 A.2d at 441.[7] The *Handy v. Geary* rule is merely a more focused relevancy rule, similar in nature to Federal Rules of Evidence 406 through 412, which represent presumptions that undue prejudice shall occur in certain situations. Second, the Rhode Island rule cannot reasonably be considered substantive in light of the policies reflected in *Erie*. It is strictly a rule of admissibility—one which could not rationally affect private ordering or encourage forum shopping. *See Erie*, 304 U.S. at 64, 58 S.Ct. at 817.[8]

■ The question remaining before us, then, is whether the evidence that Patricia McInnis had consumed three beers prior to the motorcycle accident was properly admitted under Fed.R. of Evid. 403. That rule provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We are bound by the trial judge's ruling of admissibility unless the defendants can demonstrate that he exercised his discretion arbitrarily or irrationally. *Cf. Berrios Rivera v. British Ropes, Ltd.*, 575 F.2d 966, 969 (1st Cir.1978) (findings and orders of a district court will not be upset unless clearly erroneous). *See also Rovegno v. Geppert Brothers, Inc.*, 677 F.2d 327 (3d Cir.1982). We do not believe that the trial judge abused his discretion when he admitted the evidence of drinking as relevant to the issue of the plaintiff's contributory negligence. Accordingly, we uphold that ruling.

■ Finally, we reject the plaintiff's argument that in reversing his original ruling on the plaintiff's motion in limine the trial judge greatly prejudiced Patricia McInnis. First, the plaintiff's attorney was aware that the defendants intended to bring up the reference to drinking in the hospital records prior to the conclusion of the direct examination of McInnis. He had ample opportunity to elicit that information from her himself. In addition, notwithstanding this opportunity, we are not convinced that the plaintiff was in fact prejudiced by the mere timing of the introduction of the evidence of drinking.

## B. Admission of the Release

The plaintiff also claims that the trial judge erred in admitting evidence that Patricia McInnis had released Florence Poirier from liability for the accident prior to instituting suit against the defendants. She argues that the release was offered to show that Mrs. Poirier, not the defendants, had in fact caused the amputating injury to her leg. Such evidence, she urges, is barred by Federal Rule of Evidence 408, which precludes admission of settlement agreements to prove the validity or invalidity of a claim or its amount. The defendants counter that the admission of the release does not prove the "invalidity" of the plaintiff's claim against them, but rather "narrows the issues" to allow the jury to determine what injuries were actually caused by the defendants. Appellees' Brief, p. 38. We concur with the plaintiff/appellant and hold that the trial court erred in admitting the release. We further

7. In commenting on the justification for excluding mere evidence of drinking alcoholic beverages, the Court in *Handy v. Geary* noted that: "'the probative usefulness of the evidence is more than counterbalanced by its disadvantageous effects in confusing the issues before the jury, or in creating an undue prejudice in excess of its legitimate probative weight.'" *Handy v. Geary*, 252 A.2d at 441, quoting VI Wigmore, Evidence § 1904.

8. The Tenth Circuit has recently held, in *Moe v. Avions Marcel Dassault-Breguet Aviation*, 727 F.2d 917, 932–33 (10th Cir.1984), that Fed.R. of Evid. 407 and state law counterparts are substantive rather than procedural rules. Rule 407 governs the admissibility of subsequent remedial measures to prove liability. While we do not endorse the court's holding, we do note that a rule excluding evidence of drinking is distinguishable from a 407 type rule. While the 407 type rule arguably reflects a substantive policy to encourage remedial measures, a rule limiting the admissibility evidence of drinking cannot reasonably be said to influence the behavior of potential litigants in any way.

find that this error was prejudicial, and therefore necessitates a new trial.

### 1. The Trial Court Erred in Admitting the Release

Rule 408 of the Federal Rules of Evidence governs the admissibility of evidence of compromise offers or agreements in federal trials. The rule provides in its entirety:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as either to validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The exclusion of evidence of settlement offers is justifiable on two grounds. First, the rule illustrates Congress' desire to promote a public policy favoring the compromise and settlement of claims by insulating potential litigants from later being penalized in court for their attempts to first resolve their dispute out of court. Second, such evidence is of questionable relevance on the issue of liability or the value of a claim, since settlement may well reflect a desire for peaceful dispute resolution, rather than the litigants' perceptions of the strength or weakness of their relative positions. *See* Fed.Rule of Evid. 408, advisory committee note.

In analyzing the impact of Rule 408 on the admissibility of the Poirier release, we shall initially allay any doubts that the Rule applies to cases which are posturally like the one now before us. The settlement agreement at issue here was entered into between a litigant and a third party, rather than between the two litigants themselves. The Advisory Committee Note clearly acknowledges that the policies underlying the exclusionary rule are equally applicable to such a situation. The note states that:

> While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. *The latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person.*
>
> Fed.Rule of Evid. 408, advisory committee note (emphasis added).

In the context of settlements between a litigant and a third party, it is true that Rule 408 is more commonly invoked to bar the admission of agreements between a defendant and a third party to compromise a claim arising out of the same transaction as the one being litigated. *See e.g., Sun Oil v. Govostes* 474 F.2d 1048, 1049 (2d Cir.1973); *Kendrick v. Jim Walter Homes, Inc.*, 545 F.Supp. 541, 543 n. 4 (S.D.Ind. 1981). If the policies underlying Rule 408 mandate that settlements may not be admitted against a defendant who has recognized and settled a third party's claim against him, it is axiomatic that those policies likewise prohibit the admission of settlement evidence against a plaintiff who has accepted payment from a third party against whom he has a claim. The admission of such evidence would discourage settlements in either case. In addition, the relevance of the settlement to the validity of the claim cannot logically be considered stronger in the former instance than in the latter. *Accord Fidelity & Deposit Co. of Md. v. Hudson United Bank*, 493 F.Supp. 434, 445 (D.N.J.1980). A number of recent federal cases have adopted this position, holding that Rule 408 bars evidence of settlements between plaintiffs and third party joint tortfeasors or former co-defendants.

See *Quad/Graphics, Inc., v. Fass*, 724 F.2d 1230, 1235 (7th Cir.1983) (evidence of plaintiff's settlement with two defendants in contract action not admissible at trial of remaining defendants); *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d 161, 165–66 (5th Cir.1983) (Plaintiff's covenant not to sue service station was not admissible in products liability action against defendant tire manufacturer); *United States v. Contra Costa County Water District*, 678 F.2d 90, 92 (9th Cir.1982) (in suit by United States against water district for cost of erecting wall necessitated by actions of landowner, evidence of settlement between United States and landowner not admissible).

Although Rule 408 bars the admission of evidence of settlement to prove liability or the validity of a claim, it expressly allows such evidence offered for other purposes. *See Breuer Electric Manufacturing Company v. Tornado Systems of America*, 687 F.2d 182 (7th Cir.1982). A critical inquiry in the instant case, therefore, is for what purpose the Poirier release was admitted at trial. We think it evident from a reading of the trial transcript that the district judge admitted the evidence as tending to prove that it was Mrs. Poirier's collision with the plaintiff, not the shattering of the motorcycle clutch housing, that in fact severed the plaintiff's leg.

The defendants began their case in chief at trial by calling Patricia McInnis to the stand. Their attorney, over strenuous objection by the plaintiff, entered the release into evidence and questioned McInnis at length about its significance. The objective of his line of questioning was manifest—he was attempting to elicit an admission from McInnis that she received $60,-000 from Florence Poirier because it was Mrs. Poirier alone who caused her injury. While McInnis persistently maintained that she had received the money because Mrs. Poirier had been responsible for setting the accident in motion, defense counsel repeatedly suggested that the $60,000 represented compensation for the full extent of her injuries. Trial Transcript, p. 1346–56.

The trial judge's comments in overruling the plaintiff's objection to the admission of the release further illuminate the purpose of that evidence. The judge stated:

> It seems to me that there's an issue in this case which relates ᴛo the question of who caused what, what injuries were sustained as a result of the contact with the Poirier vehicle, and what injuries the plaintiff had were the responsibilities of the defendants in this case; and it may well be that the reliance [sic] represents an admission on the part of the plaintiff. I don't see that it comes within 408 because it's not offered to prove liability or invalidity of the claims or its amount. I'm going to allow it. You may have an exception.

Trial transcript p. 1345c–1345d.

From this record it is apparent that the release was admitted as relevant to the issue of causation in fact.

As we shall discuss in more detail later, the defendants have argued that they introduced the release to attack McInnis' credibility rather than to disprove causation. Although this contention may have some superficial appeal, we see it as an attempt to obfuscate the critical issue. The release could logically impeach McInnis' credibility only by tending to show that she brought suit against the defendants knowing all the while it was Mrs. Poirier, and not the defendants, who caused the injury to her leg. Such "impeachment" evidence is simply camouflaged causation evidence.

Having concluded that the Poirier release was offered as relevant to the issue of causation, we have no difficulty in ruling that the evidence of causation or non-causation is fully subsumed under Rule 408's meaning of validity or invalidity of a claim. Causation in fact is an integral component of a tort claim; without causation there can be no liability. In the instant case, it is obvious that the defendants wanted the jury to infer that Mrs. Poirier would not have paid the significant sum of $60,000 to

the plaintiff unless it was she, *and not the defendants*, who had caused the plaintiff's injury. Whether cast in terms of "causation", "responsibility", or the "validity of the claim", the defendants wanted the jury to conclude from the fact of settlement that the defendants could not be held liable for the amputation of the plaintiff's leg. This clearly flouts the most basic policies underlying Rule 408.

Other federal courts have held in closely analogous situations that this type of jury inference is unquestionably improper under the Federal Rule. In *McHann v. Firestone Tire and Rubber Co.*, 713 F.2d 161 (5th Cir.1983), for example, the Fifth Circuit reversed the trial court's admission of a covenant not to sue given by a plaintiff in a products liability action to a third party service station owner. The plaintiff had sued the defendant Firestone Tire for injuries he sustained when a tire on his vehicle exploded, alleging that the defendant had negligently designed and manufactured the tire. *Id.* at 162–3. Firestone introduced evidence at trial that the plaintiff had previously given a covenant not to sue to a service station owner whose employee had mounted the tire. The Fifth Circuit held the covenant inadmissible under Rule 408, since the evidence "might lead the jury to deny [plaintiff's] claim against Firestone on the perception that Green Oaks Exxon would not have paid the substantial sum of $27,000 if it ... were not the party at fault." *Id.* at 166.

The *McHann* case illustrates the applicability of the policies underlying rule 408 to a situation such as the one now before us. Certainly, the admission of settlement evidence to prove or disprove causation would discourage a plaintiff from settling with one of several potential defendants. In addition, the fact of settlement, as the Advisory Committee has observed, is of questionable relevance to the issue. An innocent third party may settle, even for a large amount, merely to avoid the burdens of litigation. In the instant case, in fact,

the Poirier release is even more doubtfully relevant to the causation issue than was the covenant not to sue in *McHann*. Since neither of the parties contests the fact that the Poirier vehicle negligently struck the plaintiff's motorcycle, Mrs. Poirier is liable for the ultimate injury to the plaintiff, whether or not the collision itself was the immediate cause. Under elementary principles of proximate cause, Mrs. Poirier is legally responsible for any harm that could foreseeably result from her tortious act. *Roberts v. Kettelle*, 116 R.I. 283, 356 A.2d 207, 215 (1976); *Aldcroft v. Fidelity & Gas Co.*, 106 R.I. 311, 259 A.2d 408, 411 (1969). We think it obvious that it is reasonably foreseeable that once struck by a car, a motorcycle may crash, causing serious bodily injury to its driver. *Cf. Day v. Wynne*, 702 F.2d 10 (1st Cir.1983) (holding that harm resulting from negligent treatment of doctor was a foreseeable result of the original negligent injury); *Roberts*, 356 A.2d at 215 (holding that the negligence of another driver was foreseeable). The fact that Poirier settled or the amount she paid, therefore, cannot reasonably be indicative of the harm that was in fact caused by the collision between her car and the motorcycle as opposed to that which was in fact caused by the shattering of the clutch housing.

Defendants offer several creative, but rather illusory arguments for exempting the Poirier release from the exclusionary provisions of Rule 408. They first assert that the plaintiff's claim for relief against the defendants is grounded in a legal theory that Mrs. Poirier and the defendants are successive rather than joint tortfeasors. They claim that because there were two separate accidents involved in the case— the collision with the Poirier car and the crashing of the motorcycle—each party is liable only for the allegedly divisible portion of the plaintiff's injury that their respective acts immediately caused. Accordingly, the defendants maintain that the evidence of the plaintiff's $60,000 settlement with Florence Poirier should be admissible

as tending to clarify the portion of the harm she caused. In other words, this evidence would supposedly aid the jury in conceptually segregating the physical damage that was caused by each of the two accidents.

■ While, for a number of reasons, we view the defendants' "two accident" argument as a convoluted attempt to circumvent the prohibitions of Rule 408, we dispose of it merely by ruling that Mrs. Poirier and the defendants are indeed joint tortfeasors with regard to any injury that was in fact caused by the shattering of the clutch housing. First, contrary to the defendants' representations, the plaintiff has never advanced the successive tortfeasor or two accident theory.[9] Second, as a matter of Rhode Island law, Mrs. Poirier and the defendants are joint tortfeasors. Under R.I.Gen.Laws § 10–6–2, a joint tortfeasor "means two persons jointly or severally liable in tort for the same injury to person or property." The parties are jointly and severally liable if they are both the legal cause of harm that cannot be apportioned, whether conduct is concurring or consecutive. *Restatement (Second) of Torts*, § 879. *See also Day v. Wynne, supra,* 702 F.2d at 12. Contrary to the implication of the defendants' argument, it is obvious that Patricia McInnis' injury, the almost total severance of her leg, cannot be apportioned or divided. Assuming, as we already have, that Mrs. Poirier proximately or legally caused the ultimate injury, the defendants are joint tortfeasors unless they are simply not liable to the plaintiff.[10]

The defendants have asserted on appeal that our recent opinion in *Day v. Wynne,* 702 F.2d 10 (1st Cir.1983), lends support to

their argument. In *Day,* the plaintiff fractured her leg in a two car automobile accident and was later treated by the defendant physician. The leg did not heal properly, and the plaintiff, after releasing the driver of the other vehicle, sued the physician. The plaintiff received a jury verdict in her favor and the defendant appealed. Our opinion indicates that during the trial, the district judge admitted evidence of the settlement with the driver, and instructed the jury that they could find damages in excess of the settlement amount only to the extent that they were solely attributable to the defendant's negligence. *Id.* at 12. This case cannot assist the defendants for two reasons. First, we did not decisively indicate in *Day* the purpose for which the settlement was admitted at trial. Second, the admission of the settlement was not appealed and was therefore neither reviewed nor reviewable by us. The fact that it was admitted by the trial judge, therefore, does not bind this court to ratification of its admissibility.

The defendants also suggest that they introduced the Poirier release for a purpose other than proving causation—to impeach McInnis' testimony. Specifically, they sought to undermine her assertion that the injury to her leg occurred only after the clutch housing shattered. They wanted the jury to infer that if Patricia McInnis accepted $60,000 from Mrs. Poirier, it was because she believed her to be responsible for the injury. The introduction of the release, then, would allegedly discredit her present claim against the defendants.

■ Even if the record were not clear, as it is, that the release was admitted to prove causation, the defendants' deft paralogism

---

9. At trial the district judge inferred that the plaintiff was positing a "two-accident" theory, and assigned some significance to it in ruling on the admissibility of the release. We believe however, that the plaintiff's cause of action against the defendants presumes that Mrs. Poirier was a joint tortfeasor.

10. We note that even if Mrs. Poirier and the defendants could somehow be characterized as

"successive tortfeasors", each responsible for a divisible portion of the plaintiff's injury, the release would nonetheless still be offered to prove causation. The defendants have advanced no policy argument, and we perceive none, that Rule 408 should not apply with equal force to settlement agreements with a successive tortfeasor.

would still fail. The use of the settlement for this purpose implicitly requires the jury to infer some indicia of causation in fact from the existence of the release; otherwise it would be of no logical relevance to the issue of McInnis' credibility. We cannot permit the defendants to avoid the policies of rule 408 by merely recasting the issue of who caused the injury as an issue of who the plaintiff believed caused it.[11]

■ The defendants finally assert that the release must be admitted to ensure that the plaintiff does not recover twice for the same injury. Def.Br., p. 39. Considering the circumstances of this case, the argument is frivolous. The plaintiff explicitly offered during the trial to reduce any verdict entered against the defendants by $60,-000—the amount she has received from Mrs. Poirier under the release. This is the proper procedure for guarding against over compensation when Rule 408 precludes the admission of a settlement agreement. *See McHann, supra,* 713 F.2d at 166.

### 2. The Trial Judge's Error Was Not Harmless

■ Because we have found that the district court erred in admitting evidence of the Poirier release, we must grant the plaintiff a new trial unless the defendant can show the error was harmless. Prior to the Federal Rules of Evidence, a trial court's failure to exclude evidence of a settlement agreement was generally considered sufficiently prejudicial to warrant a new trial. *See Paster v. Pennsylvania R.R.,* 43 F.2d 908, 911 (2d Cir.1930). Because Rule 408 had broadened the scope of the common law exclusionary rule to include statements made in the course of settlement negotiations, however, it is advisable for an appellate court to examine the evidence and the context in which it was admitted to determine whether in each individual case it is more probable than not that it conveyed an impression of liability or non-liability to the jury. 2, Weinstein's Evidence, § 408[06]. We think that the great emphasis placed on the release by the defendants, both during their examination of Patricia McInnis and during their closing arguments, compels us to conclude that the jury most likely drew the desired but improper inference.

■ The defendants have argued that, even if the trial court erred, a new trial is not warranted because the jury would have returned a verdict for the defendants even without being aware of the Poirier release. We note that the jury could have legitimately rejected the plaintiff's claim based on either or both of the following findings: that the defendants did not in fact cause the injury, or that the motorcycle was "crashworthy". Only the former finding would have been influenced by the admission of the release. Since the jury did not respond to interrogatories, however, we have no insight into the actual basis of their verdict, and accordingly, we may not assume that the jury found for the defendants solely on the strength of their argument that the motorcycle was not defectively designed. We must grant a new trial, therefore, if the plaintiff presented ample evidence to permit the jury to find in their favor on both the causation and the crashworthiness issues. After a searching review of the trial transcript, we conclude that the plaintiff presented such evidence. Both sides offered the testimony of medical and engineering experts, anatomists, and eye witnesses, and it would be impossible to characterize the weight of the evidence as clearly favoring the defendants on either crucial issue.

**11.** We also note that the existence of the Poirier release could not have been legally relevant to the issue of McInnis' credibility. As we have already discussed, Mrs. Poirier, by colliding with the motorcycle and instigating the crash, was a proximate, legal cause of the plaintiff's ultimate injury. Since she was jointly liable for the harm, if any, that was caused by the shattering of the clutch housing, the fact that the plaintiff settled with her is hardly inconsistent with a claim that the motorcycle crash in fact caused the amputating injury.

 The defendants alternatively contend that any error the trial judge made was cured by his instructions to the jury. In his instructions he directed:

> In your consideration of the release by Plaintiff, you will not consider the language of the release as a defense to this claim but you may consider the release as evidence of her claim against persons other than the defendants, to be considered together with all the evidence in the case.

First, we note that it is doubtful that any instructions, no matter how clear and comprehensive, could eradicate the prejudice engendered by the admission of the release in this case. In addition, however, we do not believe the judge's instruction was even arguably curative. The judge's admonition was most likely intended to ensure that the jury did not assume that the release of Mrs. Poirier would also release the defendants from liability, thereby barring recovery against them. This is the question of law which is the subject of the cross appeal in this case and indeed was not a proper issue for jury consideration. We do not believe that the instruction, either explicitly or implicitly guards against an inference of causation from the existence of the release.

## C. Propriety of the Judge's Denial of Defendants' Directed Verdict Motion

Notwithstanding the fact that the jury returned a verdict in the defendants' favor, the defendants subsequently moved the Court to direct a verdict on the legal issue of the applicability of the Poirier release to the defendants as joint tortfeasors. The trial judge refused to grant the motion on the ground that in light of the jury's disposition of the case, the question was moot. Defendants, on cross appeal, seek reversal of this ruling.

The judge never reached the difficult legal issues raised by the defendants' motion, which have as yet, not been decisively resolved by the Rhode Island Supreme Court. Accordingly, although recent decisions of this court and the Rhode Island court may provide some guidance on this question, we may not resolve it here. *See Day v. Wynne, supra,* 702 F.2d 10; *Lennon v. MacGregor,* 423 A.2d 820, 821 n. 1 (R.I.1980). We note, however, that in light of the present reversal, the district court may wish to reconsider the defendants' motion for summary judgment based on the effect of the release.[12]

For the foregoing reasons, the judgment of the district court is hereby reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

**12.** Because the legal issue raised by the defendants' counterclaim involves a question of law which the Rhode Island courts have not yet definitively resolved, the district court may wish to consider certifying the question to the Rhode Island Supreme Court pursuant to the certification procedures set forth in the Rhode Island Supreme Court's Rule 6.