**Sal LATORRACA, et al., on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**CENTENNIAL TECHNOLOGIES INC., et al., Defendants,**

v.

**H & R Block Financial Advisors, Inc., Trustee.**

Civil Action No. 97–10304–NMG.

United States District Court, D. Massachusetts.

Oct. 9, 2008.

Norman Berman, Jeffrey C. Block, Glen DeValerio, Patrick T. Egan, Abigail R. Romeo, Berman DeValerio Pease Tabacco Burt & Pucillo, Michelle H. Blauner, Edward F. Haber, Thomas G. Shapiro, Shapiro Haber & Urmy LLP, Peter A. Lagorio, Law Office of Peter A. Lagorio, Stephen Moulton, Moulton & Gans, PC, Marc Redlich, Law Offices of Marc Redlich, Gretchen M. Van Ness, Boston, MA, Stanley D. Bernstein, Bernstein Liebhard & Lifshitz, LLP, David J. Bershad, Milberg Weiss Bershad Hynes & Lerach LLP, Jack G. Fruchter, Fruchter & Twersky, Saul Roffe, Sirota & Sirota, Ralph M. Stone, Shalov Stone & Bonner LLP, New York, NY, Howard D. Finkelstein, Finkelstein & Associates, San Diego, CA, Nancy F. Gans, Moulton & Gans, P.C., Wellesley, MA, Samuel Kornhauser, Law Offices of Samuel Kornhauser, Robert S. Schubert, Schubert & Reed LLP, San Francisco, CA, Matthew Evan Miller, Cuneo Gilbert & LaDuca, LLP, Washington, DC, Murray Miller, Miller & Miller Ltd., Phoenix, AZ, for Plaintiffs.

David A. Brown, Robert J. Muldoon, Jr., Sherin & Lodgen LLP, Joseph P. Calandrelli, Prince, Lobel, Glovsky & Tye LLP, Michael A. Collora, Dwyer & Collora, LLP, John D. Donovan, Jr., Mark Szpak, Ropes & Gray LLP, Thomas J. Dougherty, Dennis M. Kelleher, Skadden, Arps, Slate, Meagher & Flom LLP, Peter M. Saparoff, James M. Wodarski, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Crystal D. Talley, Matthew J. Walko, Smith & Duggan LLP, Boston, MA, Lawrence G. Campbell, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, Albert F. Cullen, Jr., South Boston, MA, Christopher A. Duggan, Smith & Duggan LLP, Lincoln, MA, Spencer M. Kagan, Kagan Law Offices, Stephen F. Murray, Revere, MA, Thomas G. McNeil, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, David M. Osborne, Federal Defenders Office, Philadelphia, PA, for Defendants.

Christina N. Davilas, Bingham McCutchen, Boston, MA, for Trustee.

Joseph D. Steinfield, Joseph P. Calandrelli, Prince, Lobel, Glovsky & Tye LLP, Boston, MA, for Taniki Financial Corporation.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this class action, plaintiffs have attached an account of the Taniki Financial Corporation ("Taniki") in partial satisfaction of a previously-awarded judgment in their favor in the amount of $207 million. They now move to attach the additional value in the account that has accrued since the original attachment was granted and to charge the trustee accordingly. Taniki opposes the entire attachment and moves to

strike a declaration and letter submitted by the class plaintiffs in support of their motion.

## I. *Background*

### A. Factual Background

This case arises out of efforts to enforce a $207 million judgment awarded in a class action suit alleging securities fraud on the part of three executives of Centennial Technologies, including Emanuel Pinez ("Pinez"). In addition to the class action suit, Pinez was also the target of an enforcement action brought by the Securities and Exchange Commission ("the SEC action"), which resulted in a $6.2 million judgment against him personally. The judgment in the SEC action has been paid but the class action judgment, entered on November 12, 2000, has not.

Seeking to recover some of their multi-million dollar judgment, the class plaintiffs filed an *ex parte* motion for trustee process to attach an account held at H & R Block Financial Advisors, Inc. ("H & R Block") in the name of Taniki ("the Taniki account"). Taniki was formed in 1994 by Pinez's wife, Rachel Pinez ("Ms. Pinez").[1] Five early deposits were made in the Taniki account, two of which, totaling approximately $150,000, were made by Stanbridge Ltd. ("Stanbridge"), an entity controlled by Pinez. The source of the other deposits is unclear.

Ms. Pinez's attorney, John Eardley ("Atty Eardley"), who carried out the incorporation of Taniki, asserts that she is, and always has been, its sole shareholder and beneficial owner. On September 28, 2000, however, the final judgment in the SEC action ordered that several disparate accounts, including one held at Paine-Webber, Inc. ("PaineWebber") in the name of Taniki, be liquidated in order to satisfy the judgment entered in that case. The SEC had, evidently, presented evidence sufficient to convince the Court that a consanguinity existed between Pinez and Taniki such that the Taniki assets should be assigned to the judgment against Pinez. That evidence suggested that during the mid–1990s, while Pinez was actively engaged in securities fraud and insider trading, he wire-transferred approximately $1.5 million to the Taniki PaineWebber account.

On November 7, 2005, this Court allowed the motion of the class plaintiffs to attach the Taniki account. At the time of the attachment, the account contained approximately $600,000 and, because the amount of the outstanding judgment far exceeded the value of the subject account, the entire account was attached.

### B. Motion to Expand Trustee Process and Charge Trustee

The balance of the Taniki account has since increased by $65,320. On March 7, 2008, the class plaintiffs filed a motion to amend the trustee process to include that newly added balance and, therefore, to charge H & R Block with the current value of the Taniki account ($665,320).

On April 30, 2008, Taniki filed an opposition to the motion to expand trustee process. Relying heavily on the affidavits of Atty Eardley and Ms. Pinez, Taniki argues that the attachment of the Taniki account was improvidently allowed and should, now, be dissolved. In support of that argument, Taniki acknowledges that the two Stanbridge deposits, totaling approximately $150,000, came from Pinez but contends

---

1. *Pinez was married to Ms. Pinez in the 1960s but they entered into a separation agreement* in 1988 and finalized their divorce in 2007.

they were in payment of a loan that Ms. Pinez previously extended to him to pay down business debts. Moreover, Taniki denies that the SEC's evidence with respect to the Taniki PaineWebber account, which was liquidated to satisfy the SEC judgment against Pinez, has any relevance to this case or to the ownership of the Taniki account at issue here.

Taniki argues, in the alternative, that the attachment should be limited to the $150,000 that has been identified as originating with Pinez.

### C. Motion to Strike

In support of their motion to expand trustee process, the class plaintiffs filed a motion on May 19, 2008, seeking leave to file the declaration of Patrick Egan ("Atty Egan"), the class plaintiffs' attorney. The declaration concerns an attached letter, dated March 15, 2007, from Taniki's counsel, Peter A. Gelles ("Atty Gelles"), to Atty Egan ("the Gelles letter"). That letter protests the disconnect between Pinez and the Taniki account and the corporation's lack of information about the source of some deposits made in its account.

On May 29, 2008, Taniki moved to strike the Egan declaration and the Gelles letter on the ground that they relate to settlement negotiations and are, therefore, inadmissible under Fed.R.Evid. 408.

### II. *Analysis*

#### A. Motion to Expand Trustee Process and to Charge Trustee

##### 1. Legal Standard

■ Attachment is available "under the law of the state where the court is located". Fed.R.Civ.P. 64. In Massachusetts, the seizure of property is governed by M.G.L. c. 223, §§ 42–83 (attachment) and c. 246 (trustee process), which are implemented pursuant to Mass. R. Civ. P. 4.1 and 4.2. Property subject to attachment includes only that which is "liable to be taken on execution". M.G.L. c. 223 § 42.[2] To obtain an attachment, the plaintiff must demonstrate a reasonable likelihood of success on the merits. *Int'l Ass'n of Bridge, Structural, and Ornamental Iron Workers, Shopmen's Local Union 501 v. Burtman Iron Works, Inc.,* 164 F.R.D. 305, 307 (D.Mass.1995). Although the exact burden of proof to be met is unclear, certainty of success is not required. *Id.*

■ Mass. R. Civ. P. 4.1(g) and the counterpart Rule 4.2(h) govern the dissolution of an attachment granted *ex parte.* The defendant must first introduce evidence by affidavit sufficient to challenge any finding in the *ex parte* order. *Aetna Cas. & Sur. Co. v. Rodco Autobody,* 138 F.R.D. 328, 332 (D.Mass.1991). Once the defendant provides the required evidence, the burden reverts to the plaintiff to justify the attachment as if it had not previously been granted. *Id.*

##### 2. Application

As an initial matter, it is clear that Ms. Pinez has met her burden of proffering sufficient evidence by affidavit to suggest that the original allowance of the *ex parte* attachment order may have been erroneous. Her assertions and those of her attorney that the subject funds belong to her, not Pinez, are sufficient to challenge the findings in the *ex parte* order. The burden shifts, therefore, to the class plaintiffs to justify the entire attachment as if it had not previously been granted.

---

**2.** In addition, the assets to be attached must not exceed the value of the judgment against the debtor. That requirement is not at issue in this case because the judgment against Pinez exceeds $200 million and the value of the assets in question is under $700,000.

In light of the reversion, the class plaintiffs must demonstrate a reasonable likelihood that the funds held in the Taniki account are, in fact, the property of Pinez. If so, the original attachment was justified but if not, it should be vacated.

Taniki argues, persuasively, that there is no direct evidence on the record to contradict the assertions of Atty Eardley and Ms. Pinez that the funds in the Taniki account belong to Ms. Pinez and not to her ex-husband. The circumstantial evidence, however, supports the opposite conclusion.

The information from Ms. Pinez and Atty Eardley about the $150,000, which they acknowledge originated with Pinez, is underwhelming. Ms. Pinez claims to have loaned her ex-husband "well in excess of $150,000" at some undetermined time during their long distance, 20–year marriage, although there was apparently no written loan agreement. No explanation is offered as to why that particular amount was repaid. Moreover, Ms. Pinez was apparently unaware of the repayment at the time that it was made and suggests only that she "has become aware" that Pinez repaid $150,000 of those purported loans.

Furthermore, the remaining deposits into the Taniki account at H & R Block and other deposits into Taniki's Paine-Webber account were made at a time when Pinez was engaged in securities fraud and insider trading. Although the SEC's information about Taniki's PaineWebber account is not necessarily indicative of the ownership of its H & R Block account, it undermines Ms. Pinez's claim that her business and finances were completely independent from those of Pinez.

The SEC determined that there was, in fact, some affinity between Taniki and Pinez. In particular, the SEC concluded that Pinez had funded a Taniki account despite assertions to the contrary. Similarly, this Court is aware that Pinez's funds have become commingled with those of Taniki on at least some occasions. Collectively, those facts cast doubt upon Ms. Pinez's characterization that Taniki is owned entirely by her and that the remaining funds in the Taniki account are hers. More logically, the evidence suggests that funds in the Taniki account should be attributed to Pinez himself.

■ Thus, taken as a whole, the evidence supports the conclusion that there is a reasonable likelihood that the funds in the Taniki account belong to Pinez. Therefore, the initial grant of trustee process was proper and should extend to the additional balance of the Taniki account that has since accrued.

Concurrently with their motion to expand trustee process, the class plaintiffs move to charge H & R Block as trustee of the Taniki account. In November, 2005, H & R Block was served with a trustee summons which it answered in March, 2008. Although it takes no position with respect to whether it should be so charged, H & R Block did not file an answer within 20 days of being served and, therefore, is adjudged trustee as required under M.G.L. c. 246, § 18. As such, it will also be charged the current value of the Taniki account.

### B.   Motion to Strike

#### 1.   Legal Standard

Federal Rule of Evidence 408(a)(2) prohibits the use of "statements made in compromise negotiations regarding [a] claim" as evidence of a party's "liability for . . . a claim that was disputed as to validity or amount". This Rule is meant to promote the public policy of dispute resolution outside the courtroom. *See generally McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir.1985). The First Circuit has defined "compromise" (as used in Rule 408) according to Webster's Collegiate Dictionary

to mean "a settlement of differences ... reached by mutual concessions". *Rodriguez–Garcia v. Municipality of Caguas,* 495 F.3d 1, 12 (1st Cir.2007). Furthermore, the First Circuit has noted that

> letters whose contents offer[ ] no concessions [do] not meet the definition of "compromise" and thus [are] outside the scope of [Rule 408].

*Id.* at 12, citing *Sandlin v. Shapiro & Fishman,* 919 F.Supp. 1564, 1569 (D.Fla. 1996).

### 2. Application

Taniki contends that Attys Gelles and Egan engaged in numerous settlement discussions in the years following the class plaintiffs' motion to attach and that the Gelles letter was prepared and submitted as part of those negotiations. The class plaintiffs respond that the Gelles letter relates solely to discovery matters and was, in fact, written prior to the onset of any settlement negotiations. They claim that the Gelles letter was written in response to a letter sent by Atty Egan to Atty Gelles on December 11, 2006 ("the Egan letter"), which was intended to gather information concerning the Taniki account.

The Egan letter is, indeed, apparently limited to a request for information concerning Pinez's interest in the Taniki account and the source of some deposits made therein. It includes no reference whatsoever to a settlement.

The Gelles letter responds to that plain request for information without reference to a settlement except to conclude: "I suggest that we talk further to discuss how to bring this matter to a conclusion". That statement suggests settlement discussions had not yet begun at the time of the Gelles letter but that Taniki was then interested in initiating such discussions. The Gelles letter, moreover, makes no con-

cession that would bring it within the ambit of Rule 408.

For those reasons, the declaration of Atty Egan and the Gelles letter lie outside the scope of evidence protected by Fed. R.Evid. 408.

### ORDER

In accordance with the foregoing, the plaintiffs' motion to expand approval of trustee process and to charge trustee (Docket No. 406) is **ALLOWED.** H & R Block, as trustee, is charged in the amount of $665,320 in partial satisfaction of the outstanding judgment against Pinez. The motion to strike Egan's declaration and the Gelles letter attached thereto (Docket No. 423) is **DENIED.**

**So ordered.**