**William D. McHANN, Plaintiff-Appellant,**

v.

**The FIRESTONE TIRE AND RUBBER COMPANY, Defendant-Appellee.**

**No. 82–4401.**

United States Court of Appeals,
Fifth Circuit.

Sept. 2, 1983.

James E. Brown, Starkville, Miss., for plaintiff-appellant.

Cox & Dunn, Jackson, Miss., William H. Cox, Jr., Mitchell, McNutt, Bush, Lagrone & Sams, Fred M. Bush, Jr., Tupelo, Miss., for defendant-appellee.

Before BROWN, WISDOM and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

This case involves the explosion of a Firestone tire which seriously injured the plaintiff-appellant, William McHann, and a tire mechanic, Mark Ivy. The jury rejected McHann's contention that manufacturing defects in the tire caused the explosion. We reverse the judgment that was in Firestone's favor and remand the case. We conclude that the district court erred in instructing the jury that Mark Ivy was negligent as a matter of law and in admitting in evidence a covenant not to sue between McHann and Ivy's employer.

### I.

On August 7, 1978, McHann purchased a Firestone automobile tire from a Firestone dealer in Starkville, Mississippi. The parties stipulated that the tire was a "blemish" or "blem" tire, which means that the tire has a cosmetic defect that does not affect its structural soundness. The "blem" in this case was a discoloration in the white sidewall of the tire.[1]

McHann took the tire to Green Oaks Exxon Service Station for mounting on a tire rim. During the mounting, Mark Ivy, Green Oak's tire mechanic, encountered considerable difficulty making the tire beads seat properly.[2] Ivy removed the tire and rim from the tire mounting machine and placed them on the floor in the bay area of the station. Ivy successfully seated the bead on the whitewall side of the tire, but still could not seat the back or under side of the tire. Ivy then proceeded to use a rubber donut, a rubber device which helps to seat the beads by trapping air in the tire, along the back side of the tire. At some

---

1. Firestone originally manufactured the tire for Atlas Tire Company, but Atlas rejected it. Although Atlas apparently rejected the tire because of a discoloration on the whitewall, Firestone's expert Robert Lee conceded that some other irregularity in the tire may have also led to its rejection.

2. The bead of a tire is the part that remains in contact with the wheel or rim. There is a bead on each side of the tire containing strands or hoops of steel wire vulcanized into the rubber to strengthen the bead. As air is pumped into the tire, the beads start sliding out along the smooth metal rim and will eventually seat against the flange on the edge of the rim. A bead which is "hung up" is one that has not fully slid into its designed position but which is caught on the rim before it seats smoothly around the entire circumference of the rim. Continuing to pump air into a tire with a hung-up bead can cause the tire to explode.

point, after inflating and deflating the tire and lubricating the donut, Ivy asked McHann to assist in mounting the tire by standing on the whitewall side, or top side, of the tire while McHann attempted to seat the rear bead to the rim.[3] While the tire was being inflated, the bead wire broke on the back side, or under side, of the tire causing it to explode with such force that McHann was thrown twenty feet in the air. McHann was knocked unconscious and sustained serious ankle injuries. Ivy was also injured.

McHann brought suit against Firestone alleging that a manufacturing defect in the tire was the proximate cause of his injuries. At trial, McHann's expert, John Forney,[4] testified that the beads were weakened and shortened by kinks, loose bead wires, and excessive spacing in the bead wires. Forney's examination of the tire showed that the circumference of the tire was too small to seat properly on the rim because of the presence of these defects. Forney concluded that these defects were manufacturing defects and that the defects, rather than Ivy's handling of the tire, caused the explosion and injury to McHann.

Firestone presented expert testimony[5] that the tire was not defective but was damaged by the handling of Ivy and the force of the explosion. Firestone argued that the tire did not seat because Ivy failed to lubricate the rim and that it exploded because of too much air pressure on the bead. Firestone contends that Ivy's negligence was the sole cause of the explosion because Ivy failed (1) to secure the tire down during inflation; (2) to use an air gauge to check tire pressure; (3) to lubricate the tire bead and rim; (4) to heed an express warning from a fellow employee that the tire bead was being dangerously overinflated; and (5) to follow industry standards with respect to the recommended pressure to use in inflating tires. Firestone also presented the testimony of Chuck Bassett, an employee at the service station, who stated that Ivy had consumed several small "pony" beers and ignored Bassett's warnings that the tire was about to explode.

The district court made two evidentiary rulings that were critical to the outcome of the case. The district court allowed Firestone to introduce into evidence a Covenant Not to Sue executed between McHann and Green Oaks Exxon under which McHann received $27,500 in complete satisfaction of his claim against Green Oaks. The district court, however, refused to allow McHann to examine Firestone's witnesses concerning Firestone's settlement with Ivy for $18,000. The district court also instructed the jury that Ivy was negligent as a matter of law. The jury returned a verdict for Firestone, and the district court rejected McHann's request for a judgment notwithstanding the verdict or a new trial.

On appeal, McHann argues that Ivy's negligence was a question of fact and contends that the district court erred in instructing the jury that Ivy was negligent as a matter of law. McHann also contends that the district court should not have allowed the introduction of the Covenant Not to Sue but should have allowed Firestone's settlement with Ivy into evidence. McHann's final contentions are that the district court did not allow McHann to cross-examine fully one of Firestone's expert witnesses and that the verdict was

---

**3.** Ivy worked approximately 45 minutes trying to mount the tire before it exploded. The experts and Ivy testified that a tire usually can be mounted in ten to twelve minutes or less.

**4.** Forney is the president, owner, and operator of Tire Consulting Services, Inc. Forney has a background in mechanical and industrial engineering. He has worked extensively in the tire industry as a tire designer, field engineer, tester, and consultant.

**5.** Three expert witnesses testified for Firestone. Robert S. Lee, Firestone's Senior Product Engineer, had thirty-two years of tire engineering experience and a Master's Degree in automotive engineering. Max Nonamaker, whose testimony concerned mishandling of the tire by Ivy, had thirty years of experience in tire consulting. Donald F. Avila, who testified that the bead failure was caused during mounting, had experience in product analysis and engineering with Goodyear and Kelly Springfield.

against the overwhelming weight of the evidence. Firestone contends that the evidence supported the jury verdict and that the district court's evidentiary rulings and jury instructions were correct.

## II.

McHann's first contention is that the district court improperly took the issue of Ivy's negligence away from the jury when it stated in Instruction D–1:

> The Court instructs the jury that Mark Ivy, as an employee of Valentine's Exxon Service Station, was guilty of negligence as a matter of law in attempting to mount and inflate the tire in the manner in which he did.
>
> If you believe that this negligence was the sole proximate cause of the accident, then you must return a verdict in favor of Firestone.

McHann argues that there was sufficient conflicting evidence over Ivy's negligence to warrant sending the question to the jury. McHann also contends that this instruction focused the guilt on Ivy in a way that virtually assured a favorable verdict for Firestone.

Firestone contends that Ivy was negligent as a matter of law in four ways. First, Ivy did not secure the tire, and he allowed McHann to stand on the unsecured tire. Second, Ivy failed to use an air gauge to check the tire pressure. These two facts are undisputed. Third, Ivy allegedly failed to heed Bassett's warning that the tire was about to explode. Fourth, Ivy allegedly did not lubricate the tire bead but simply lubricated the rubber donut. According to Firestone, these facts establish that Ivy's negligence was an undisputed issue for the judge to decide.

 In this diversity suit, the substantive law of Mississippi applies. *Erie Railroad Co. v. Tompkins,* 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.[6] A federal court, however, applies a federal rather than a state standard for determining whether

there is sufficient evidence to create a jury question. *See Hagan v. EZ Manufacturing Co.,* 5 Cir.1982, 674 F.2d 1047, 1051; *Maxey v. Freightliner Corp.,* 5 Cir.1982, 665 F.2d 1367 (en banc). The sufficiency of the evidence on any issue to make a case for jury consideration is a question of law for the trial judge:

> The judge must determine whether the evidence is sufficiently in conflict to permit differing views concerning disputed issues of fact and, whether, even if the evidence is not contradicted, conflicting inferences can be drawn from it. An issue cannot be taken from the jury if there are facts on which reasonable and fair minded men and women in the exercise of impartial judgment might reach different conclusions.... It is also clear that the fact-finding power that belongs to the jury includes the drawing and rejecting of inferences from the facts.

*Johnson v. William C. Ellis & Sons Iron Works,* 5 Cir.1979, 604 F.2d 950, 958 (citations omitted). *See Maxey,* 665 F.2d at 1371; *Boeing Co. v. Shipman,* 5 Cir.1969, 411 F.2d 365, 374–75 (en banc).

 Our examination of the record leads us to conclude that reasonable and fair-minded persons in the exercise of their judgment might reach different conclusions with respect to Ivy's negligence. Although it is undisputed that Ivy did not secure the tire, the testimony of Ivy and Forney established that the tire could not be mounted in the usual manner. Forney also testified that a non-defective tire could be mounted safely off the tire machine, although he conceded that it is ideal from a safety standpoint to secure the tire. Ivy testified that he had safely mounted tires off the tire machine and on the floor a number of times. From this testimony, the jury could have rationally concluded that Ivy was not negligent in these circumstances.

We also find that the jury might not have concluded that Ivy was negligent for failing

---

6. The test for negligence in Mississippi is "whether the actor being charged with negligence ... acted as a reasonable and prudent person would have acted under the same or similar circumstances." *Knapp v. Stanford,* 392 So.2d 196 (Miss.1980).

to use an air gauge. Ivy, an experienced tire mechanic, testified that he could accurately estimate the amount of air in a tire by the sound of the air as it entered the tire. Forney's testimony that experienced tire mechanics can accurately estimate air pressure within tires and fill a tire within a pound or two of its recommended pressure supports Ivy's testimony. Forney also testified that the explosion occurred at the relatively low pressure of 40 to 50 pounds per square inch, based on the fact that the rubber and fabric near the break of the bead was in good shape and not torn or split. The jury could have inferred from this evidence that Ivy did not act unreasonably in failing to use the tire gauge in the time period before the explosion and that the tire had not been overinflated.

The final two grounds on which Ivy was allegedly negligent—the failure to heed Bassett's warning and the failure to lubricate the tire beads—are disputed. Bassett's testimony concerning the warning was successfully impeached on a number of grounds and Bassett's veracity was seriously called into question.[7] The question of Bassett's credibility should have been resolved by the jury. On the lubrication issue, the jury could have rationally concluded that the lubrication of the rubber donut properly lubricated the bead and rim based on the testimony of Ivy and Forney. Both Ivy and Forney testified that the rim was in good shape, and Forney stated that lubrication was not really necessary when seating a new tire on a reasonably good rim.

We find that a jury composed of reasonable and fair-minded persons could have concluded that Ivy was not negligent on these facts. There was substantial testimony that Ivy was an excellent mechanic, that he handled the tire properly, and that the cause of the explosion was a defective tire. The presence of credibility issues, disputed testimony, and undisputed testimony from which reasonable persons could draw different inferences, make the question concerning Ivy's negligence a jury issue. The evidence may lead more reasonably to the conclusion that Ivy was negligent, but it is not for the trial court or this Court to choose the more reasonable interpretation of the evidence. *See Johnson v. William C. Ellis & Sons,* 604 F.2d at 959. This fact-finding power belongs to the jury. We hold that the district court erred instructing the jury that Ivy was negligent as a matter of law.

### III.

McHann also contends that the district court erred in allowing a Covenant Not to Sue (the "Covenant") executed between McHann and Green Oaks Exxon into evidence. With respect to the Covenant, the district court instructed the jury:

The Court instructs the jury that Mr. McHann has received $27,500 in damages from the owner of the Exxon Service Station where he was injured. If you find from a preponderance of the evidence that this sum was full compensation for all damages which the plaintiff is legally entitled to recover, then you must return a verdict for the defendant, Firestone, since a person may only recover once for any particular injury. If you find that this was only partial compensation of the damages that he is entitled by law to recover, then you must deduct

7. McHann testified that Bassett was not present when the explosion occurred. Aldean Valentine, the owner of Green Oaks Exxon, testified that Bassett told him that he was not present at the explosion but was outside serving a customer. Forney testified that it was highly unlikely that Bassett saw the tire overinflate as Bassett describes, and that the break occurred on the underside of the tire out of view supports the conclusion that Bassett could not see any effects of overinflation if in fact it did occur. Bassett also testified that his step-father worked for the local Firestone dealer and that his mother had worked for him the past.

On the beer issue, Ivy was not available to rebut Bassett's testimony because he was serving abroad in the armed forces. McHann, however, stated that he did not see any beer or smell any beer on Ivy's breath. Valentine, whose head was within inches of Ivy's at the hospital in order to hear what Ivy was saying soon after the accident occurred, testified that he smelled no beer on Ivy's breath and that Ivy would not drink beer at the station in any event.

$27,500 from any verdict that you otherwise would return against Firestone. You are not to assume from this instruction that the Court is indicating that your verdict should be for or against either party, but the Court is simply required to instruct you on all issues in the case.

McHann contends that the admission of the Covenant led the jury to believe that Green Oaks Exxon acknowledged Ivy's negligence and that McHann had received accord and satisfaction for his claim.[8] Firestone contends that the jury as fact finder is entitled to consider the plaintiff's evaluation of settlement as to one of two joint tortfeasors as it weighs the questions of proximate cause and damages. Firestone points out that the Mississippi Supreme Court approved a virtually identical instruction in *Fore v. Quave*, 377 So.2d 919 (Miss.1979).[9]

We conclude that the district court erred in allowing the Covenant into evidence. Federal Rule of Evidence 408 provides that evidence of accepting a valuable consideration in compromising a claim which was disputed as to either amount or validity is not admissible to prove liability for or invalidity of the claim or its amount. Under Rule 408, "a defendant cannot prove the invalidity or amount of a plaintiff's claim by proof of plaintiff's settlement with a third person, nor can plaintiff show the defendant's liability or extent of liability, by proof of defendant's settlement with a third person." 2 D. Louisell & C. Mueller, Federal Evidence § 171, at 290 (1978 & Supp.1983). *See Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 2 Cir.1982, 687 F.2d 563, 569; *United States v. Contra Costa County Water District*, 9 Cir.1982, 678 F.2d 90, 92. Our concern is that the Covenant Not to Sue would have led the jury to deny McHann's claim against Firestone based on the perception that Green Oaks Exxon would not have paid the substantial sum of $27,500 if it (Ivy) were not the party at fault. Excluding evidence of the Covenant will eliminate this possible source of prejudice to McHann, and will carry out the policy of Rule 408 to encourage out-of-court settlements. The district court on remand must simply deduct the $27,000 from the award, if any, to ensure that McHann is not overcompensated for his injury contrary to Mississippi law.[10]

## IV.

Our resolution of the Covenant issue also resolves McHann's contention that Firestone's settlement with Ivy for $18,000 should have been admitted. This settle-

---

**8.** McHann argues that this instruction, along with the instruction that Ivy was negligent as a matter of law, focused the jury's attention on Ivy rather than on whether the tire was defective. McHann maintains that parties settle cases for many reasons and that settlements are not necessarily indicative of liability.

**9.** Under Mississippi law, a jury has the right to find for the defendant if they believe that the plaintiff has been fully compensated for his injuries by a joint tortfeasor even if the defendant is also guilty of negligence. *Wood v. Walley*, 352 So.2d 1083 (Miss.1977). Mississippi courts instruct the jury concerning the amount plaintiffs receive from joint tortfeasors so the jury can deduct this amount from any award granted to the plaintiff. *See Fore v. Quave*, 377 So.2d 919 (Miss.1979).

**10.** That Rule 408 requires exclusion of the Covenant when Mississippi law allows its admission creates tension with the *Erie* doctrine. We note that the efficient use of court time and resources is a federal concern legitimately within the reach of the federal authority and that Rule 408 promotes efficiency by fostering out-of-court settlements. In this case, this federal concern can be balanced with the State's concern that plaintiffs not recover from a defendant if a joint tortfeasor has already compensated them fully. On remand, the district court can deduct the amount that McHann has already received from any judgment a jury might grant on remand. This accommodation of federal and state concerns is consistent with the concept of federalism found in *Erie*. *See* D. Louisell & C. Mueller, Federal Evidence § 173; *see generally* C. Wright, Law of Federal Courts 621–627 (4th ed. 1983); Wellborn, The Federal Rules of Evidence and the Application of State Law in the Federal Courts, 55 Tex.L.Rev. 371 (1977). We also note that many jurisdictions require the court rather than the jury to deduct amounts received from joint tortfeasors because this method is more fair to the litigants and reduces uncertainty, prejudice, and inadequate damage verdicts. *See* 3b Bender's Personal Injury, Discharge of Liability § 3.05(3) (1980 & Supp.1982).

ment is inadmissible under Rule 408 to establish the liability of Firestone. It is reasonable to infer that jurors would view the settlement as an admission of guilt. In addition, the incentive for parties to settle cases involving many plaintiffs would be undermined if their settlement with one victim could come back to haunt them in later suits. The district court properly excluded this evidence.

## V.

McHann makes the meritless contention that the district court refused to permit a full cross-examination of Firestone's witness, Robert S. Lee, and made remarks prejudicial to McHann in front of the jury. The record shows that the district court urged McHann's counsel to expedite a repetitive line of questioning concerning an undisputed fact. There is also no evidence of prejudicial remarks. We reject McHann's contention that the district court acted improperly.

McHann's final contention is that the jury's verdict was against the overwhelming weight of the evidence. We do not reach this contention because of our determination that McHann is entitled to a new trial. The district court erred in instructing the jury that Ivy was negligent as a matter of law and in allowing the Covenant Not to Sue before the jury. These errors were prejudicial to McHann's case and warrant a reversal.

We REVERSE the judgment in favor of Firestone and REMAND the case for a new trial to be conducted consistent with this opinion.