**Jerry L. KENNON and Mary Ann Kennon, Individually and as Next Friend of Jerry L. Kennon, Jr., Plaintiffs-Appellees,**

v.

**SLIPSTREAMER, INC., Defendant-Appellant.**

**No. 84–2270.**

United States Court of Appeals, Fifth Circuit.

July 23, 1986.

Thomas O. Moses, Evans, Moses & Barkley, Beaumont, Tex., for defendant-appellant.

Dewey Gonsoulin, Mehaffy, Weber, Keith & Gonsoulin, Roger S. McCabe, Beaumont, Tex., for plaintiffs-appellees.

Before CLARK, Chief Judge, THORNBERRY and JONES, Circuit Judges.

CLARK, Chief Judge:

Texas law governs this product liability case based upon diversity jurisdiction. The jury rendered a verdict against defendant-appellant Slipstreamer, Inc. Slipstreamer appeals, alleging various errors in the conduct of the trial. Finding that the district court's improper comment to the jury on the amounts paid in plaintiff's settlements with other defendants was prejudicial to the rights of Slipstreamer, Inc., we reverse and remand for a new trial.

I

On June 12, 1980, the moped on which Jerry L. Kennon, Jr., was riding struck a chughole in a private road. A piece of the moped's windshield pierced the boy's right eye. Kennon's parents filed suit in the United States District Court for the Eastern District of Texas against Slipstreamer, the manufacturer of the windshield, and Mid-America Vespa, the windshield wholesaler. Slipstreamer cross-claimed against Mid-America Vespa and brought third-party actions against Moped Traveland, Inc., the windshield retailer, and E.I. DuPont De Nemours & Co., the manufacturer of the lucite from which the windshield was made.

After jury selection but before trial had begun, the Kennons settled with Mid-America Vespa, Moped Traveland, and DuPont for ten dollars each. The district court dismissed the three parties from the suit. The Kennons' action against Slipstreamer proceeded to trial and was submitted to the jury on a strict liability theory. The Kennons alleged that the windshield had two manufacturing defects: excessive brittleness, and three small gouge marks on the inside of one of the holes drilled in the windshield for the attachment of mounting hardware. The jury found Slipstreamer liable. It awarded Jerry L. Kennon, Jr. $1,000,000 in damages and awarded his parents $100,000 in their individual capacity. The district court entered judgment on the verdict.

## II

Following the settlement and the testimony of the first witness, the district court, on its own initiative, made these comments to the jury:

Ladies and Gentlemen, before we break for lunch I want to mention one other thing. For two reasons, I want to make sure you understand the true facts and I don't want you to speculate on something that doesn't have anything to do with the job you have to perform. That relates to why the other Defendants are not here. I mentioned that casually this morning. I meant to elaborate on it a little bit at that time and I forgot to do so.

. . . . .

The Plaintiff has made an election in this case, which is not that unusual, that it wishes to proceed in the lawsuit against the one Defendant only, and there is a procedure available to do that, that eliminates their presence, even though the other two had been sued by this Defendant. *The way that works is that the Plaintiff can accept a nominal payment, it was Ten Dollars in this case*, and then they are excused from further participation in the case.

Now the effect of that is that, depending on what the evidence is, their contribution to the cause of this occurrence may still be submitted to the jury or it may not. That's a decision I will have to make at some point. You may have to make a decision in that respect. We will see how that goes later in the case. *But I didn't want you speculating* on why they were not here and be concerned as to whether the Court had made a ruling on the merits of the case, which I have not, or speculate *on whether the Plaintiff had received substantial monies, which they have not.* I wanted you to know the full facts of the matter. (emphasis added)

Slipstreamer's counsel objected to the court's disclosure of the amount of the settlement. In response to the court's inquiry as to how this disclosure prejudiced Slipstreamer, counsel argued that the disclosure constituted an impermissible comment on the weight of its third-party claims against DuPont and Moped Traveland. Slipstreamer moved for a mistrial. The court denied the motion. The court also denied Slipstreamer's subsequent motion for a new trial, in which Slipstreamer contended that the court had erred in informing the jury of the amount of the settlement.

Fed.R.Evid. 408 provides that evidence of a settlement is not admissible "to prove liability for or invalidity of the claim or its amount." While a principal purpose of Rule 408 is to encourage settlements by preventing evidence of a settlement (or its amount) from being used *against* a litigant who was involved in a settlement, the rule is not limited by its terms to such a situation. Even where the evidence offered favors the settling party and is objected to by a party not involved in the settlement, Rule 408 bars the admission of such evidence unless it is admissible for a purpose other than "to prove liability for or invalidity of the claim or its amount." *See Belton v. Fibreboard Corp.,* 724 F.2d 500, 505 (5th Cir.1984). The district court has discretion to admit evidence of a settlement for other

purposes. *Branch v. Fidelity & Casualty Co.*, 783 F.2d 1289, 1294 (5th Cir.1986).

 The district court's disclosure of the fact of settlement was clearly for the purpose of avoiding jury confusion, rather than for the purpose of showing liability. In a case such as this one, where the absence of defendants previously in court might confuse the jury, the district court may, in its discretion, inform the jury of the settlement in order to avoid confusion. *See Belton, supra,* 724 F.2d at 505. The district court did not abuse its discretion in revealing the fact of settlement in this case.

 The district court's disclosure of the *amount* of settlement, however, is a different matter. While revealing the fact of settlement explains the absence of the settling defendants and thus tends to reduce jury confusion, disclosing the amount of settlement serves no such purpose. *See Belton, supra,* 724 F.2d at 505 (disclosure of the fact of settlement did not violate Rule 408 because it was offered to reduce jury confusion but disclosure of the settlement amount did not fall under any exception to Rule 408). Disclosing the amount of settlement had no proper purpose in the circumstances of this case and therefore it violated Rule 408.

The district court's disclosure of the amount of the settlement prejudiced Slipstreamer in two ways. First, the fact that the settlement was for a nominal amount suggests that the plaintiffs thought that the settling defendants were not liable for the plaintiff's injuries and therefore points the finger at Slipstreamer as the one responsible. Just as we held in *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d 161, 166–67 (5th Cir.1983), that informing the jury of a large settlement by a co-defendant might lead the jury to believe that only the co-defendant, and not the nonsettling defendant, was negligent, the disclosure of the "nominal" ten dollar settlement in this case suggests to the jury that Slip-

streamer alone was liable.[1] Furthermore, the willingness of the plaintiff to settle for a pittance with the other defendants could be taken by the jury as a reflection of the strength of the plaintiffs' case against Slipstreamer.

Second, revelation of the amount of the settlement informed the jury that if the plaintiff was to receive any compensation for his injuries, he would have to get it from Slipstreamer. Such information is clearly prejudicial in a case such as this one where a ten year old child is permanently injured and where defendant's liability is sharply contested.

 We do not attribute to the district court any intention that disclosure of the settlement amount should be used by the jury to determine Slipstreamer's liability or the amount of the claim. It is nonetheless clear that Slipstreamer was prejudiced by that disclosure. No instruction was given to mitigate that prejudice. When Slipstreamer's counsel objected to the court's disclosure of the settlement amount, the court responded that it revealed the settlement amount as part of the explanation of the procedure by which the defendants were required to be removed from the case. The court then asked counsel if he wished the court to further elaborate on that Texas procedure. Slipstreamer's counsel's refusal of this offer cannot be construed as a waiver of the error. Further discussion would have re-emphasized to the jury the nominal payment involved in the settlement. The court did not offer to give any other type of instruction, and it is not apparent what other sort of instruction could have minimized the prejudice already visited on Slipstreamer. Moreover, the district court's comments may have appeared to invite the jury to consider the settlement amount in its deliberations. The court stated that it did not want the jury speculating "on whether the Plaintiff had received substantial monies, which they have not."

---

1. The district court did not submit instructions to the jury on the liability of either DuPont or Moped Traveland. We hold, however, *infra,* that there was sufficient evidence to go to the jury on the question of Moped Traveland's negligence.

This statement suggests that the fact that the plaintiff has received no money may be relevant to the issues before the jury.

▪ The dissent takes the position that statements made to the jury by a district judge cannot be classified as "evidence," and, therefore, they are not subject to the Federal Rules of Evidence. We disagree. When a judge chooses to bring matters of fact to the attention of the jury, we have applied the Federal Rules of Evidence. As the dissent notes (n.2), both *Belton* and *McHann* have employed this analysis.[2]

The dissent also asserts that it is contrary to the purpose of Rule 408 to allow one who is not a party to a settlement to invoke the protection of the rule. Again, we disagree. The central purpose of Rule 408 is to exclude compromise negotiations as to all rights they do not expressly control. It does not discourage settlement to prohibit the use of the fact or amount of settlement as an offensive weapon which can reach beyond its terms. Literally and substantively Rule 408 would forbid Kennon advising the jury that his settlements with the other defendants netted him nothing. The court cannot do for Kennon what Kennon could not do for himself.

▪ Finally, the dissent suggests that a jury would most likely assume that a plaintiff who releases some but not all defendants received little or nothing from those released. The validity of this observation is obviously at the core of our disagreement. Rather than predict who is right, we hold no more than that no party, or the court, should disclose to the jury the amount of a settlement with other defendants in the absence of compelling circumstances demanding disclosure which are not present here.

Under the circumstances of this case, the district court's announcement to the jury

violated Rule 408 and prejudiced the substantial rights of Slipstreamer. It is entitled to a new trial.

### III

Our resolution of the Rule 408 issue makes it unnecessary to consider other errors raised by Slipstreamer. We do address two questions raised because they are likely to occur on retrial.

### A

Slipstreamer contends that the district court erred in refusing to submit an issue concerning Jerry L. Kennon, Jr.'s negligence for failing to wear protective headgear and his parents' negligence for failing to require him to wear his headgear. Slipstreamer asserts both a statutory and a common-law duty to wear protective headgear.

▪ The district court properly refused to submit an instruction concerning breach of a statutory duty. Tex.Rev.Civ.Stat.Ann. art. 6701c–3 § 2 (Vernon Supp.1986) states: "No person under 18 years of age may operate a motorcycle on a public street or highway of this state unless he wears protective headgear that meets standards adopted by the Department of Public Safety...." There is no evidence in the record, however, to indicate that the accident occurred on a "public street or highway." The undisputed testimony was that the accident took place on a private road. Furthermore, the evidence showed that the Texas Department of Public Safety does not require any eye protection with its approved headgear. Therefore, even if the Kennons violated the Texas statute, such violation could not have been a "cause" of the injury to Jerry L. Kennon, Jr.'s eye.

The common-law duty is a different matter. In *Duncan v. Cessna Aircraft, Co.,*

---

**2.** The dissent concedes that *Belton,* 724 F.2d at 505, applies Rule 408 to protect a non-settling litigant but would distinguish *Belton* on its facts. We fail to see how any factual distinctions between *Belton* and the present case support the dissent's position that Rule 408 can *never* be used to protect a litigant who was not a party to

the settlement in question. Under the dissent's approach *Belton* must be wrongly decided. It may be true that the prejudice involved in *Belton* was even greater than that in the present case. All we say is that the prejudice to Slipstreamer was substantial enough to require reversal.

**1072**

665 S.W.2d 414 (Tex.1984), the Texas Supreme Court adopted a system of comparative causation in strict liability cases. Under this system, the amount of a plaintiff's recovery in a strict liability action will be reduced by the percentage of the injury attributable to the plaintiff's negligence, "whether it is characterized as assumption of risk, misuse, or failure to mitigate or avoid damages...." *Id.* at 428. Under *Duncan*, then, Slipstreamer was entitled to an instruction on breach of a common-law duty if there was evidence in the record from which the jury could reasonably find that the failure to wear eye protection was negligent.

*Carnation Co. v. Wong*, 516 S.W.2d 116, 117 (Tex.1974), in which the Texas Supreme Court held that "persons whose negligence did not contribute to an automobile accident should not have the damages awarded to them reduced or mitigated because of their failure to wear available seat belts," is not to the contrary. *Wong* was a negligence, not a strict liability, action and therefore beyond the scope of *Duncan*. As a noted commentator on Texas tort law has written:

> Prior to *Duncan*, the Supreme Court determined in [*Wong*] that a plaintiff's negligence contributing to his injuries but not contributing to the accident producing event was not applicable to limit that plaintiff's recovery. Under the comparative negligence statute, the court declared that a plaintiff's failure to wear safety belts or otherwise mitigate the injury did not limit his recovery even though such failure unquestionably contributed to his injuries. However, under comparative causation as literally defined in *Duncan*, the plaintiff's recovery should be reduced by the percentage of the injury caused by his failure to avoid the consequences of injury. Thus, when the plaintiff obtains a jury award based on a theory other than negligence, contributory negligence in failing to utilize injury avoidance devices should clearly limit the amount of recovery.

Sales, *Product Liability Law in Texas*, 23 Houston L.R. 1, 652–53 (1986) (footnotes omitted).[3]

*Duncan* does state that the "negligent failure to discover or guard against a product defect is not a defense." *Duncan, supra*, 665 S.W.2d at 432. This statement does not mean, however, that the plaintiff's negligence which permits or increases injury is not a defense merely because the product defect was the sole or initiating cause of the accident. To the contrary, *Duncan* expressly characterizes the "failure to mitigate or avoid damages" as a defense. *Id.* at 428. While the plaintiff's negligence in failing to discover or prevent a defect is not a defense under *Duncan*, conduct which is negligent irrespective of the knowledge or existence of the defect can constitute a defense. *See Sales, supra*, at 239–40.

■ We conclude that the district court erred in holding, as a matter of law, that Jerry L. Kennon, Jr. had no Texas common-law duty to wear a helmet with eye protection. Since proof may be different when the case is retried, the district court should decide whether that record contains evidence of Jerry L. Kennon, Jr.'s negligence in failing to wear such a helmet or of his parents' negligence in failing to require him to wear one sufficient to create a jury issue. We hold only that the issue of common law duty cannot be dismissed as a matter of law if a jury could reasonably find such action negligent.

B

Slipstreamer contends that the district court erred in refusing to submit to the jury an issue concerning Moped Traveland's comparative causation in bringing about the Kennons' harm. Slipstreamer

---

**3.** Sales also notes that the failure to wear a safety belt may present a special case because Tex.Rev.Civ.Stat.Ann. art. 6701d specifically provides that failure to use a safety belt is not contributory negligence. *See* Sales, *supra*, at 653 n. 177 ("Plaintiff's recovery would not be reduced if his negligence was failure to use a safety belt, but *should be if, for example, the negligence was failure to wear a motorcycle helmet*") (emphasis added).

argues that under *Duncan,* 665 S.W.2d at 430, it was entitled to have its liability reduced by the percentage of causation attributable to settling third-party defendant Moped Traveland. Slipstreamer asserts that Moped Traveland's liability should have been submitted to the jury on two theories: strict liability for placing a defective product into the stream of commerce, and negligence for failing adequately to inspect the windshield for defects.

▮ No reversible error occurred in the court's refusal to submit the strict liability issue. *Duncan* makes clear that "[c]omparative causation does not affect the right of a retailer ... to receive indemnity from the manufacturer of the defective product when the retailer ... is merely a conduit for the defective product and is not independently culpable." 665 S.W.2d at 432; *see Sales, supra,* at 314–17. The jury found Slipstreamer strictly liable for placing a defectively manufactured product into the stream of commerce. Even if it had also found Moped Traveland strictly liable, Moped Traveland would have been entitled to indemnity from Slipstreamer. *See Thiele v. Chick,* 631 S.W.2d 526, 533 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.), *cited with approval in Duncan,* 665 S.W.2d at 432. Thus, Slipstreamer would in either case bear the entire liability. If Slipstreamer is not found strictly liable on retrial, the issue would also disappear.

The district court's refusal to submit the negligence issue presents a more difficult problem. An "independently culpable" retailer cannot recover indemnity from a strictly liable manufacturer. *Duncan,* 665 S.W.2d at 432; *see Sales, supra,* at 316–17; *see also Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 819–20 (Tex.1984) (noting that indemnity exists in product liability cases "to protect the *innocent* retailer in the chain of distribution" (emphasis in original)). Thus, if the jury had found Moped Traveland negligent in failing adequately to inspect the windshield, Slipstreamer would have been entitled to a reduction in its liability by the percentage

of causation allocated by the jury to Moped Traveland, the settling tortfeasor. *Duncan,* 665 S.W.2d at 430.

Under Texas law, a retailer has no duty to inspect a product manufactured by another for latent defects. *Cf. Champion Mobile Homes v. Rasmussen,* 553 S.W.2d 237, 243 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.) ("We have found no Texas cases, and have been cited none, holding that a vendor has a duty to inspect or test a product manufactured by another for latent defects either before or after it has been sold to a third party."); Restatement (Second) of Torts § 402 (1965) (retailer "who neither knows nor has reason to know" that product is likely to be dangerous is not liable for failing to discover the danger by inspection). On the other hand, a retailer has a duty to conduct a reasonable inspection for non-latent defects. *Cf. McLain v. Hodge,* 474 S.W.2d 772, 777 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e. (holding that retailer of used gun could be found negligent for failing to discover defect in shell ejector); Restatement (Second) of Torts § 401 (1965) (retailer who "knows or has reason to know" that product is dangerous must make a reasonable effort to warn users). This is not a case involving a closed package which a retailer would not be required to inspect. Indeed, the owner of Moped Traveland testified that Moped Traveland customarily inspected Slipstreamer windshields for defects at the time that it installed them and that, as a retailer, it had a responsibility to conduct such inspections.

▮ The court should make several determinations. It should determine whether there was sufficient evidence to warrant submitting to the jury the issue of whether the manufacturing defect could have been discovered by a reasonable inspection. If so, it should determine whether there was sufficient evidence to justify submitting an issue on the reasonableness of Moped Traveland's inspection. If the evidence is sufficient on both of these issues, it should decide whether the evidence is sufficient that Moped Traveland's failure to ade-

quately inspect the windshield was approximate cause of Jerry Kennon, Jr.'s injuries. In making these determinations, the court must, of course, regard all of the evidence in the light most favorable to Slipstreamer and inquire whether reasonable jurors could have resolved these issues in Slipstreamer's favor. *See Foster v. Ford Motor Co.*, 616 F.2d 1304, 1309 & n. 10 (5th Cir.1980); *cf. Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc) (establishing standard for motions for directed verdict and judgment notwithstanding the verdict).

We cannot know what the record on retrial will contain, however, on the record before us now we conclude that there was sufficient evidence on all three of these points to have required the issue of Moped Traveland's negligence be submitted to the jury. Both the Kennons' expert, Dr. Jack Roberts, and Slipstreamer's expert, Mr. Willard Castner, testified that there were three small gouge marks on the inside of one of the holes drilled in the windshield for the attachment of mounting brackets. The experts agreed that two of the gouges were visible to the naked eye.[4] Mr. James Ted Williams, principal stockholder and president of Moped Traveland, testified that when Moped Traveland received the windshield rubber grommets were in place in the holes. He added, however, that he was able to see the condition of the mounting holes despite the placement of the grommets. While the smallest of the three defects may be considered latent; whether the two larger defects were non-latent is a matter upon which reasonable minds could differ. Thus, a jury issue is presented.

Whether Mr. Williams' inspection of the windshield was reasonable also presents an issue for the jury. Williams testified that he inspected the windshield, including the area around the mounting holes. He stated that he did not observe any defects. Dr. Roberts, on the other hand, testified that the two larger marks were "easily visible." He added that "any visual inspection would pick up those." Mr. Castner testified that "if you take that windshield and you look at it, you can, if you look closely, you can see these two [larger flaws] without a microscope." Castner later described the two gouges as "rather large." On the basis of this testimony, a jury could reasonably conclude that Williams' inspection of the windshield was inadequate.

Finally, we turn to the proximate cause issue. Dr. Roberts testified that the two visible flaws did not contribute to the cracking of the windshield; only the third flaw, not visible to the naked eye, was responsible. Arguably, therefore, even a reasonable inspection would not have revealed the existence of a dangerous condition. In such a case, "the failure to inspect cannot be said to be the cause of a risk of injury." *Davis v. Gibson Products Co.*, 505 S.W.2d 682, 688 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.). However, in this case a reasonable jury could find that an adequate inspection would have revealed the two visible gouges and that the discovery of those gouges would have put Williams on notice that the mounting hole was flawed.

The evidence in this record was sufficient to permit a reasonable jury to find that the two larger gouges were non-latent, that Moped Traveland's inspection of the windshield was inadequate, and that the inadequate inspection was a proximate cause of the Kennons' injuries.

---

**4.** Dr. Roberts testified that the two larger gouges were "fairly large, about .75 millimeters thickness and about one millimeter in depth." The smallest gouge, he testified, was "just barely detectable to the naked eye, but it's about half a millimeter by half a millimeter." Dr. Roberts did not notice the smallest gouge when he first inspected the windshield. Only after further inspection under a microscope did the gouge become evident.

Mr. Castner stated:
[W]e have two rather large, in my opinion rather large gouges and the one that is near the hole is much smaller, as I said earlier, and I would estimate it is only half the depth and certainly area wise it is probably, is on the order of possibly to a tenth of that of the size of these....

## IV

Based on the district court's error in disclosing the amount of settlement in violation of Rule 408, we reverse the judgment below and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

THORNBERRY, Circuit Judge, dissenting:

The majority overturns the district court's judgment on a jury verdict because the court mentioned to the jury, in the course of explaining the absence of several settling defendants, the amount of the settlement. I believe that the majority's result is wrong. Even more significant than the result, however, is the majority's analysis of Fed.R.Evid. 408, an analysis that undoubtedly will color future cases. Because I believe that the majority has stretched Rule 408 beyond its intended limits, I respectfully dissent.

## I.

I have three objections to the majority's Rule 408 analysis. First, I do not think that the Rule can properly be applied to the trial judge's unsolicited comments. A judge's comments from the bench are not "evidence" to which the rules of evidence apply. One cannot speak of the admissibility of a judge's remarks. The language of Rule 408 makes plain that it does not apply to comments from the bench: the Rule prohibits the use of evidence concerning settlement to prove validity or amount of a claim, but permits use of the evidence if it is "offered for another purpose." Judges do not "offer" evidence; parties do. In analyzing the court's comments in this case, we should inquire whether the court abused its discretion in deciding that the value of the comments in avoiding jury confusion outweighed any prejudice to the parties. This test is analogous to, but not controlled by, Fed.R.Evid. 403; I will discuss it further in Part II of this dissent.

Second, even if Rule 408 does apply, I believe that the majority's use of the Rule on behalf of one not a party to the settlement ignores its purpose. Rule 408 is directed against the practice of using a party's settlement or offer to settle as an implicit admission of liability. *See generally* 4 J. Wigmore, Wigmore on Evidence § 1061 (J. Chadbourn rev. ed. 1972) (discussing history and policy of common law rule). Although commentators have advanced several rationales for the common law predecessor to Rule 408, *see id.*, the Rule itself is rooted in the policy of promoting settlement by privileging settlements and settlement negotiations, *see Branch v. Fidelity & Casualty Co.*, 783 F.2d 1289, 1294 (5th Cir.1986) (noting Rule's policy of promoting settlement); Fed.R.Evid. 408 advisory committee note (stating that this is "[a] more consistently impressive ground" for the Rule); S.Rep. No. 1277, 93d Cong., 2d Sess. (1974) ("The purpose of this rule is to encourage settlements which would be discouraged if such evidence were admissible."), *reprinted in* 1974 U.S. Code Cong. & Ad. News 7051, 7056; 23 C. Wright & K. Graham, Federal Practice and Procedure § 5302, at 173 (1980) (noting that Rule is based on the privilege rationale).[1] In light of its purpose of promoting settlement, Rule 408 requires exclusion only when evidence of a settlement is offered against a party to the settlement. *See* Fed.R.Evid.

---

1. A second rationale for excluding evidence of settlement or offer of settlement is lack of relevancy; the "offer may be motivated by a desire for peace rather than from any concession of weakness of position." Fed.R.Evid. 408 advisory committee note; *see* E. Cleary, McCormick on Evidence § 274, at 811 (3d ed. 1984). The Advisory Committee on the federal rules disfavored this rationale, however, *see* Fed.R.Evid. 408 advisory committee note (stating that the privilege rationale is a "more consistently impressive ground" for the Rule), and the Senate Judiciary Committee apparently viewed the Rule as resting solely on the privilege rationale, *see* S. Rep. No. 1277, 93d Cong., 2d Sess. (1974) (noting that the purpose of the Rule is to "encourage settlements which would be discouraged" if evidence of settlement were admissible), *reprinted in* 1974 U.S. Code Cong. & Ad. News 7051, 7056; *see also* 23 C. Wright & K. Graham, Federal Practice and Procedure § 5302, at 173 (1980) (noting that Rule 408 rests on privilege rationale).

408 advisory committee note ("While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises *when offered against a party thereto.*") (emphasis added); E. Cleary, McCormick on Evidence § 274, at 811 (3d ed. 1984) (under privilege rationale, "the rule would be available as an objection to one who made the offer in question"); C. Wright & K. Graham, *supra*, § 5302, at 174 (noting that "if the party who made the offer is willing to have it introduced, the privilege rationale does not provide any basis for objections by others"). Slipstreamer was not a party to the settlement at issue in this case. Properly understood, therefore, Rule 408 affords Slipstreamer no ground for objecting to introduction of the fact or amount of settlement. The majority's holding to the contrary substitutes literalism for careful consideration of the Rule's purpose.

Third, I disagree with the majority's conclusion that the trial judge disclosed the amount of settlement "to prove liability for or invalidity of the claim or its amount," and not "for another purpose." Fed.R. Evid. 408. The court's comments to the jury, quoted at length in the majority opinion, make plain that the court disclosed both the fact and the amount of settlement to avoid jury confusion—to prevent the jury from "speculating" on why the settling defendants were absent and on whether the plaintiffs had received "substantial monies." The court's disclosure of the amount of settlement might not have been necessary to avoid jury confusion, but that was surely its purpose.[2]

For these reasons, I believe that the majority errs in applying Rule 408 to the district court's comments.

### II.

Although the majority purports to base its decision on Rule 408, its approach—balancing the value of the settlement information against its prejudice to Slipstreamer—seems to draw its inspiration from Rule 403.[3] I too would employ a balancing approach in evaluating the district court's comments, although, as I have noted, I would not apply the rules of evidence to a trial judge's unsolicited comments. But for several reasons—apart from its misplaced reliance on Rule 408—I believe that

---

**2.** The majority relies heavily on *Belton v. Fibreboard Corp.*, 724 F.2d 500 (5th Cir.1984), and *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d 161 (5th Cir.1983). I acknowledge that *Belton* employs an analysis similar to the majority's; the court in that case appears without discussion to apply Rule 408 to unsolicited comments by the district court and on behalf of defendants who were not parties to the settlement. But *Belton* is easily distinguishable on its facts. There, after the district court had properly disclosed the fact of settlement and the jury had returned its verdict, the court informed the jury that the settlement would be deducted from the verdict and sent the jury out to reconsider. When the jury returned with a higher verdict, the court again rejected it. The court disclosed to the jury the amount of settlement and sent it out again. The court accepted the jury's third and highest verdict. *See Belton*, 724 F.2d at 502–04. Thus, in *Belton* the district court virtually insisted that the jury consider the amount of settlement in assessing damages. In this case, by contrast, the district court briefly mentioned the amount of settlement as part of its effort to avoid jury confusion.

*McHann* is also distinguishable. There, the district court admitted against the plaintiff evidence of the plaintiff's settlement with a third party and excluded evidence offered against the defendant of the defendant's settlement with a third party. The appellate court held that both settlements should be excluded under Rule 408. *See* 713 F.2d at 165–67. In *McHann*, evidence of each settlement was offered against a party to the settlement, and the privilege rationale required exclusion. Slipstreamer was not a party to the settlement in this case.

**3.** Fed.R.Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." The Rule does not literally apply to comments from the bench; the trial judge's remarks are not "evidence" and have no "probative value." They may be valuable for avoiding jury confusion or for other administrative reasons, however, and it is that value that I believe should be balanced against the danger of unfair prejudice in evaluating the propriety of the court's remarks.

the majority has applied the balancing approach incorrectly in this case.[4]

To begin with, it seems to me that the majority overstates the prejudice caused Slipstreamer by the court's disclosure of the amount of the settlement. The majority points to two sorts of prejudice: First, "the fact that the settlement was for a nominal amount suggests that the plaintiffs thought that the settling defendants were not liable for the plaintiff's injuries and therefore points the finger at Slipstreamer as the one responsible." Second, "revelation of the amount of the settlement informed the jury that if the plaintiff was to receive any compensation for his injuries, he would have to get it from Slipstreamer." But both sorts of "prejudice" are inherent in the adversary system. Most of what a plaintiff does, from filing suit through closing argument, is designed to "point the finger" at the defendant as "the one responsible." The jury surely expects as much. A plaintiff who has sued several defendants may indicate to the jury his belief that one or another defendant is chiefly responsible for his injuries.[5] The district court's disclosure of the amount of the settlement merely told the jury indirectly what the plaintiff could have told them directly. Similarly, the jury frequently knows that if an injured plaintiff is to receive compensation, he must get it from a particular defendant. This is most obviously the case when the plaintiff sues a single defendant, but it is often true in multi-defendant cases as well. For example, when a plaintiff who has sued several defendants dismisses all but one of them, without comment from the court, the jury most likely assumes that the plaintiff has recovered little or nothing from the absent defendants. Yet no one would argue that the dismissal unfairly prejudices the remaining defendant.

The "prejudice" that Slipstreamer suffered in this case is the prejudice inherent in its status as defendant. The jury, a repository of common sense, knows that the plaintiff seeks to point the finger at the defendant as "the one responsible," and it frequently knows that the plaintiff must recover from the defendant if he is to recover at all. If this is prejudice, it is not the sort of impermissible prejudice that warrants reversal of a judgment on a jury verdict.

I believe that the majority compounds its error in weighing the prejudice to Slipstreamer by discounting the value of a limiting instruction. The majority errs in two respects. First, it implies that the district court had a duty to offer an instruction *sua sponte*.[6] Fed.R.Evid. 105 provides that when evidence is admissible for one purpose but not for another, "the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." (Emphasis added.) In the absence of a request, the court is not required to provide a limiting instruction. *See e.g., Staniewicz v. Beecham, Inc.*, 687 F.2d 526, 531 (1st Cir.1982); *United States v. Regner*, 677 F.2d 754, 757 (9th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 220, 74 L.Ed.2d 175 (1982). Slipstreamer did not request a limiting instruction.

Second, the majority indicates that a limiting instruction would not have ameliorated the prejudice to Slipstreamer even if it had been offered. I am less inclined than the majority to conclude that jurors will disregard instructions from the trial judge. If, upon request from Slipstreamer, the judge had instructed the jury: "I have disclosed the fact and amount of settlement solely to explain why the settling defend-

---

**4.** I note that Slipstreamer did not invoke Rule 403 or any analogous balancing test either before the district court or before this court.

**5.** For example, the plaintiff in a multi-defendant case could properly make the following jury argument: "The evidence shows that defendant X is principally responsible for the plaintiff's injuries. The evidence shows that defendants Y and Z had little, if anything, to do with causing

the plaintiff's injuries." This argument would "point the finger" at defendant X as "the one responsible."

**6.** The majority notes that "[n]o instruction was given to mitigate" the prejudice to Slipstreamer and adds that "[t]he court did not offer to give" any kind of limiting instruction.

ants are absent and to prevent you from speculating on the size of the settlement. You may not consider this information in determining whether Slipstreamer is liable for the plaintiffs' injuries, or, if so, the amount of the plaintiffs' damages," I am confident that the jury would have done as the judge told them. I am not so naive as to believe that jurors can simply forget what they have heard, but I do believe that they generally make a conscientious effort to follow instructions. The doctrine of limited admissibility, codified in Rule 105, evinces a similar belief on the part of those who drafted the Federal Rules of Evidence.

Finally, I believe that the majority errs in giving no deference to the district court's decision that the value of the settlement information in avoiding jury confusion outweighed any prejudice to Slipstreamer. The majority's mistake may stem from its reliance on Rule 408, which requires exclusion of settlement information if offered to prove liability or amount of damages. But if the majority is actually applying a balancing approach analogous to that provided in Rule 403, as I believe it is, then it should give considerable deference to the district court's manner of striking the balance, reversing only for abuse of discretion. *Cf. Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1153 (5th Cir.1981) (appellate court will reverse trial court's Rule 403 decision only for "clear abuse of discretion"). I am confident that the district judge in this case did not abuse his discretion in disclosing the fact and amount of the settlement.[7]

### III.

It is true that the verdict in this case is substantial, and a reversal lessens the bur-

den on tort defendants and their insurers. Whatever my concern might be as to large verdicts in tort cases, however, I do not believe that we should stretch Rule 408 beyond its intended limits, as I believe has been done in this case. I fear that this decision, and others like it, will distort the jurisprudence of this court long after the current concern with large jury verdicts has subsided. With deference, I respectfully dissent.

---

7. I note also my disagreement with the majority's conclusion in Part III(A) of its opinion that the district court erred in holding that Jerry L. Kennon, Jr. had no common law duty to wear a helmet with eye protection. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984), states: "We reaffirm the rule in § 402A comment n of the *Restatement (Second) of Torts* that negligent failure to discover or guard against a product defect is not a defense.... This rule serves to protect consumer reliance on product safety." Comment n of the *Restatement* states:
Contributory negligence of the plaintiff is not a defense when such negligence consists

merely in a failure to discover the defect in the product, *or to guard against the possibility of its existence.* On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under [section 402A] as in other cases of strict liability. (Emphasis added.)
I believe that any negligence on the part of Jerry L. Kennon, Jr. consisted solely in his failure to guard against the possibility that the windshield was defective.