**KATZSON BROS., INC., a Colorado Corporation, Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 86–1047.

United States Court of Appeals, Tenth Circuit.

Feb. 22, 1988.

---

Richard H. Right, P.C., Englewood, Colo., for petitioner.

Scott A. Schachter (F. Henry Habicht II, Asst. Atty. Gen., and Michael W. Steinberg, U.S. Dept. of Justice, Washington, D.C., Francis S. Blake and Jane W. Gardner, U.S. E.P.A., Denver, Colo., and Judy Wheeler, U.S. E.P.A., Washington, D.C., with him on the brief), Dept. of Justice, Washington, D.C., for respondent.

Before MOORE and ANDERSON, Circuit Judges, and PHILLIPS, District Judge.[*]

JOHN P. MOORE, Circuit Judge.

Petitioner Katzson Brothers, a wholesale supplier of janitorial laundry and dry cleaning products, petitions for review of a $4,200 penalty assessed by the Environmental Protection Agency (EPA). EPA levied this penalty when Katzson Brothers failed to file a 1983 annual report listing its production of pesticides as required by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). Katzson Brothers ar-

---

[*] Honorable Layn R. Phillips, United States District Judge for the Western District of Oklahoma, sitting by designation.

gues on appeal that EPA's service of process was improper and violated the requirements of due process. Katzson Brothers also argues that the severe penalty fails to reflect significant mitigating factors. We hold that Katzson Brothers received service of process well within the parameters of due process. We are concerned, however, with the extreme fine assessed by EPA, particularly since neither the Regional Administrator nor the Chief Administrator adequately analyzed the factual basis for the penalty. We therefore remand to EPA with instructions to allow Katzson Brothers a hearing and to reconsider the penalty amount.

## I.

Katzson Brothers has for a number of years produced small amounts of Kaybro Algaecide. Until 1983, Katzson Brothers consistently filed yearly reports with EPA stating how much algaecide it had produced and sold. When EPA did not receive the 1983 report by the due date of February 1, 1984, it sent Seymour Katzson, Secretary–Treasurer and one-half shareholder of Katzson Brothers, two letters by certified mail and made at least three telephone calls requesting the report. Mr. Katzson twice requested and was sent the proper report form. The return receipts for the letters and the copies of the report form were signed by three different employees of Katzson Brothers, including J. Rudisell, a secretary with the company.

In February 1985, after fruitlessly waiting a year for the 1983 report, EPA filed an administrative complaint which proposed a civil penalty of $4,200 and advised Mr. Katzson of his right to a hearing before an Administrative Law Judge. EPA received the return receipt back from Katzson Brothers, signed by Ms. Rudisell. When Seymour Katzson failed to respond to the complaint, EPA continued to try

contacting him without success. EPA then filed a motion for a default order and again received a return receipt signed by Ms. Rudisell and no response from Mr. Katzson.

On June 28, the Regional Administrator of EPA issued a default order assessing the full penalty given in the complaint. Mr. Katzson attempted to vacate this order, but the Regional Administrator denied his motion in a seven-line ruling stating that "good cause" to vacate had not been established.[1] Mr. Katzson appealed this decision to the Administrator of EPA, who affirmed the default order. Specifically, the Administrator dismissed Mr. Katzson's claim that Ms. Rudisell had "sabotaged" the company by diverting mail and telephone messages as "uncorroborated and strain[ing] all credulity." The Administrator also found that service of process was proper under EPA's Consolidated Rules of Practice and did not violate the requirements of due process. Finally, the Administrator ruled that the civil penalty amount had been properly calculated by EPA. Mr. Katzson's motion for reconsideration was subsequently denied.

## II.

Mr. Katzson first argues that the default order is invalid because of improper service. He cites Fed.R.Civ.P. 4(d)(3), which requires a complaint to be delivered to an officer, partner, agent, or other person authorized to receive service of process. Mr. Katzson also relies on the following sections of EPA's Consolidated Rules of Practice:

(i) Service of a copy of the signed original of the complaint, together with a copy of these rules of practice, may be made personally or by certified mail, return receipt requested, on the respondent (or his representative).

1. This order states:

Counsel for [Katzson], by both motion and informal conference, has presented arguments for vacating the Default Order issued June 28, 1985. As arguments therefor, [Katzson] alleges failure to receive the complaint despite certified return receipt, and lack of effective service of process. I hereby find that under the Consolidated Rules of Practice, 40 C.F.R. Section 22.17(d), a good cause has not been shown to support [Katzson's] motion. The motion to vacate the Default Order ... is hereby denied.

(ii) Service upon a domestic or foreign corporation ... shall be made by personal service or certified mail, as prescribed by paragraph (i) above, directed to an officer, partner, a managing or general agent, or to any other person authorized by appointment or by Federal or State law to receive service of process.

40 C.F.R. § 22.05(b)(1)(i), (ii) (1985). Mr. Katzson interprets these provisions as requiring EPA to directly serve him or his authorized agent. He alleges that EPA's decision to send the complaint and the motion for default to a secretary denied him proper notice and an opportunity to respond.

The review of an agency's findings is governed by 7 U.S.C. § 136n(b), which states "[t]he order of the Administrator shall be sustained if it is supported by substantial evidence when considered on the record as a whole." While substantial evidence means more than a mere scintilla, the possibility of reaching two different conclusions from the evidence presented does not prevent an administrative agency's findings from satisfying this threshold. *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). This standard of review requires a court to give due deference to an agency's special expertise and discretionary power to fashion remedies. *Id.* at 621, 86 S.Ct. at 1027. We note, however, that this deference should be somewhat tempered in the instant case because default judgments are not favored by courts, and an entry of default may be set aside for good cause shown. Fed.R.Civ.P. 55(c); 40 C.F.R. § 22.17(d); *Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980).

 In accordance with these principles of review, we hold the Administrator correctly determined that EPA properly served Mr. Katzson. While Rule 4(d) appears to require personal delivery, the Rules of Civil Procedure do not bind administrative agencies. *E.g., Silverman v.*

*Commodity Futures Trading Comm'n*, 549 F.2d 28, 33 (7th Cir.1977); *Hess & Clark v. FDA*, 495 F.2d 975, 984 (D.C.Cir. 1974). Rather, agencies are free to fashion their own rules of procedure, so long as these rules satisfy the fundamental requirements of fairness and notice. EPA has availed itself of this opportunity by establishing its Consolidated Rules of Practice. These rules and the requirements of due process alone determine whether EPA's service is proper.

We believe the relevant sections of EPA's Consolidated Rules do not require direct personal service. It is undisputed that EPA served the complaint by certified mail, return receipt requested, and addressed to Seymour Katzson. Service to a "representative" encompasses a personal secretary, such as Ms. Rudisell, who regularly receives and signs for certified mail. If "representative" was intended to be read narrowly to include only officers, partners, and agents, it would have been further qualified to incorporate the specific classes of persons mentioned in the second section.

Furthermore, where the Consolidated Rules seek to require actual delivery, they quite clearly use the appropriate language. *See, e.g.,* 40 C.F.R. § 22.05(b)(1)(iv)(A) (service upon a state or a local government shall be accomplished "by delivering a copy of the complaint to the chief executive officer thereof"). The plain language of the second section, on the other hand, indicates that when service is effectuated by certified mail, the letter need only be addressed, rather than actually delivered, to an officer, partner, agent, or other authorized individual. This provision ensures that the representative who actually receives the mail will know to whom it should be delivered. Any other interpretation would severely hinder service of process on corporations by certified mail, since the postal service employee would have to wait on the corporation's premises until the officer, partner, or agent could sign the return receipt.[2]

---

2. The Consolidated Rules of Practice specify that a copy of the rules must accompany each complaint. 40 C.F.R. § 22.14. There is some discrepancy whether Katzson Brothers received these rules. Mr. Katzson argues that the certificate of mailing attached to the complaint indicates only the complaint was mailed. The EPA secretary who mailed the complaint to Katzson

■ Nor did EPA's service of process violate the requirements of due process. The mails may be used to effectuate service of process if the notice reasonably conveys the required information and affords a reasonable time for response and appearance. *E.g., Mennonite Board of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). Due process does not require actual notice. If an agency employs a procedure reasonably calculated to achieve notice, successful achievement is not necessary to satisfy due process requirements. *Day v. J. Brendan Wynne, Inc.,* 702 F.2d 10, 11 (1st Cir.1983); *Stateside Mach. Co. v. Alperin,* 591 F.2d 234, 241 (3d Cir.1979). EPA's service of the complaint by registered mail with return receipt requested, as well as its substantial efforts to contact Katzson over a sixteen-month period, satisfies these due process concerns.[3]

### III.

We have considerably more difficulty with EPA's argument that the Administrator did not abuse his discretion by upholding a penalty of $4,200. EPA argues that it derived the penalty amount by following its published guidelines. EPA uses a matrix incorporating the type of violation and the size of the violating company to determine civil penalties. *See* 39 Fed.Reg. 27,711–18 (1974). This figure may then be increased or decreased by up to ten percent depending on the gravity of the violation. EPA treated Katzson's violation as a failure to register, and, according to the matrix, the proposed penalty for a company with gross annual sales over $1 million that

knows of FIFRA's registration requirements is $4,200.

■ While these guidelines may have been followed by EPA, neither the Regional Administrator nor the Chief Administrator adequately addressed the penalty amount. The Regional Administrator did not mention the penalty amount at all in his denial of Katzson Brothers' motion to vacate, and the Chief Administrator simply agreed with the Regional Administrator's conclusory finding in the default order that the penalty comported with EPA guidelines. This complete absence of inquiry into the factual basis for the penalty is troubling. As the court in *Harborlite Corp. v. ICC,* 613 F.2d 1088 (D.C.Cir.1979), stated:

> One basic procedural safeguard requires the administrative adjudicator, by written opinion, to state findings of fact and reason that support its decision. These findings and reasons must be sufficient to reflect a considered response to the evidence and contentions of the losing party and to allow for a thoughtful judicial review if one is sought.... Moreover, a court "cannot 'accept appellate counsel's *post hoc* rationalizations for agency action'; for an agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.'"

613 F.2d at 1092 (quoting *FPC v. Texaco, Inc.,* 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974)) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)). *See also Morton v. Dow,* 525 F.2d 1302 (10th Cir.1975) (agency's decision upheld because the Adminis-

---

Brothers, however, claims she always includes a copy of the rules with every complaint she mails. In any event, failure to include the rules with the complaint in this instance is harmless error, since the complaint gave the citation for the Consolidated Rules in the Code of Federal Regulations, and Mr. Katzson has shown no resulting prejudice. *E.g., McCulloch Interstate Gas Corp. v. Federal Power Comm'n,* 536 F.2d 910, 913 (10th Cir.1976).

**3.** Contacting Mr. Katzson was complicated by his failure to register a corporate agent until December 12, 1984, only six weeks before service of the complaint. EPA checked with the Colorado Secretary of State's office on December 27 and was told that Mr. Katzson had not yet designated an agent. Mr. Katzson did not submit evidence showing he had designated an agent until after the Administrator issued his final decision. The Administrator, though, addressed the matter fully in his order on reconsideration and still upheld the final decision. Ironically, Mr. Katzson appointed himself agent for the corporation. Therefore, EPA directed the complaint, the motion for default, and the several warning letters to the correct individual.

trative Law Judge made the necessary findings on the ultimate issues, clearly indicated his reasoning, and gave evidence to support his conclusions).

By effectively rubber-stamping EPA's determination of the penalty amount, the Regional Administrator and the Chief Administrator failed to make findings regarding Katzson Brothers' prior compliance with the filing requirement or its ability to pay the fine. They also failed to consider that the company did not produce any algaecide in 1983, and the violation therefore did not affect the environment or the health of anyone. These factors, though, are important in determining the proper penalty amount. The Administrator is required by statute to consider the effect of the penalty upon the ability of a business to continue and the gravity of the violation. 7 U.S.C. § 136*l* (a)(4). If the Administrator finds that the violation did not cause significant harm to health or the environment, the Administrator may issue a warning rather than a penalty. *Id.*

We are also troubled by the severity of the penalty. The maximum penalty for any violation of FIFRA is $5,000. 7 U.S.C. § 136*l*(a)(1). Considering Katzson Brother's spotless prior compliance record and the lack of harm caused to the environment by the violation, we question EPA's judgment in assessing a fine that is only $800 less than the maximum penalty amount. EPA has shown greater temperance in the past. In an agency decision, *Turner Copter Services*, FIFRA No. 85–4 (EPA) (Nov. 5, 1985), for example, plaintiff was fined only $1,500 for three violations involving the use of a registered pesticide in a manner incompatible with its labeling, despite the fact that Turner accidentally sprayed sensitive crops and a pedestrian. And in *Aero–Master v. EPA*, 765 F.2d 746 (8th Cir.1985), EPA assessed only a $2,100 penalty for the shipping of improperly labeled pesticides. The reviewing court balked even at this relatively minimal fine and suggested the agency reduce the penalty because the violation was "essentially technical and non-willful." *Id.* at 747.

Because of the deficient review by the Regional and Chief Administrators, we think Mr. Katzson has shown good cause to set aside the penalty. We therefore remand the case to EPA with instructions to grant Mr. Katzson a hearing to consider the mitigating factors emphasized in this opinion. While we do not order the penalty amount to be reduced, we encourage EPA to carefully evaluate plaintiff's arguments and reconsider its prior position. We anticipate that a careful review of this matter will result in an appropriate determination of the penalty assessment.

REVERSED AND REMANDED.