**Benjamin ARES–PÉREZ, Plaintiff,**

v.

**CARIBE PHYSICIANS PLAZA CORPORATION, et. al., Defendants.**

**CIVIL NO. 15–1172 (GAG)**

United States District Court, D. Puerto Rico.

Signed 08/02/2017

Jose F. Velazquez–Ortiz, Velazquez Law Office, PSC, Caguas, PR, for Plaintiff.

Carlo Giuseppe Agrelot–Aponte, De Corral & De Mier, LLP, San Juan, PR, for Defendants.

## OPINION AND ORDER

GUSTAVO A. GELPI, UNITED STATES DISTRICT JUDGE

Benjamin Ares–Pérez ("Plaintiff") filed the present medical malpractice suit against Caribe Physicians Plaza Corporation, Dr. José A. Rosario–Rodríguez and their respective insurers seeking to recover for emotional damages that he suffered as a result of the death of his brother, Pedro Ares–Pérez ("Mr. Ares–Pérez"), which allegedly was "the direct and proximate result of the negligent acts and omissions of defendant's doctor and the hospital nursing staff, amounting to medical malpractice and hospital negligence[.]" (Docket No. 23 ¶¶ 1.1, 6.1.)

Presently before the Court are three motions in limine filed by Plaintiff. (Docket Nos. 93–95.) The first seeks to exclude an emergency room incident report from the day in which Mr. Ares–Pérez was treated and the testimony of Attorney Patricia De Frias, who found the report. (Docket No. 93.) The second motion in limine seeks to bar Defendants from using the police report that was prepared as a result of the accident which led Mr. Ares–Pérez to seek medical treatment in the first place, as well as his autopsy report. (Docket No. 94.) Finally, the third motion in limine seeks to preclude any mention of the settlement agreement between Plaintiff and Dr. Jose A. Rosario–Rodríguez. (Docket No. 95.) Caribe Physicians Plaza Corporation and its insurer ("Defendants") opposed said motions, arguing that all of the evidence objected by Plaintiff are admissible under the Federal Rules of Civil Proce-

dure and the Federal Rules of Evidence. (Docket Nos. 102–104.) For reasons more fully explained below, the motions in limine at Docket Nos. 93 and 94 are **DENIED**, and the motion in limine at Docket No. 95 is **GRANTED**.

## I. Discussion

A. Motion in limine at Docket No. 93: Emergency room incident report and related testimony of Attorney De Frias

■ Plaintiff seeks exclude the presentation of an emergency room incident report dated August 15, 2013 ("ER report"). (Docket No. 93 at 3.) The basis of Plaintiff's argument for exclusion is not clear. Plaintiff contends that the existence of said report "was surprisingly revealed by Dr. Rosario at his deposition taken by plaintiff on February 2017", given that Defendants had previously denied the existence of said document. Id. at 2. Defendants counter that Dr. Rosario's revelation of the existence of the ER report on February of 2017 came as a surprise to all, and "[a]fter long and arduous search, Ms. Patricia De Frias (Caribbean Medical Center's Risk Director) found the [ER report]" and the same was produced to Plaintiff on March 20, 2017. (Docket No. 102, at 2.)

Plaintiff claims that he was deprived of the opportunity to depose Luis Torres (the person who allegedly prepared the ER incident report), since the document was produced only twenty days prior to the discovery deadline. Plaintiff posits that he was not able to depose Mr. Torres within said timeframe because Mr. Torres's contact information was not provided, but fails to explain why he did not attempt obtain said information prior to the discovery deadline or to seek an extension of such deadline based on Dr. Rosario's revelation. (Docket No. 92, at 2.)

Plaintiff's legal basis for excluding the ER report is Federal Rule of Civil Procedure 37(c)(1), which penalizes a party that "fails to provide information or identify a witness as required by Rule 26(a) or (e)" by disallowing the "use of that information or witness to supply evidence ... at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

Federal Rule of Civil Procedure 26 governs a litigant's duty to disclose relevant information. Specifically, Rule 26(a)(3)(B) requires that pretrial disclosures be made at least thirty days before trial. Since no trial date has been set and Plaintiff admits that Defendants produced the ER report twenty days prior to the discovery deadline, there is plainly no basis to argue that Defendants did not comply with the discovery duties under Rule 26(a). On the other hand, Rule 26(e) requires that if a party subsequently becomes aware that its responses to an interrogatory are incorrect, the party must correct such responses "in a timely manner[.]" FED. R. CIV. P. 26(e)(1)(A).

On June 16, 2015, Plaintiff requested that Defendants "identify any incident report made concerning the events described in the Complaint" with respect to the medical care of Mr. Pedro Ares–Pérez and to provide a copy of said documents. (Docket No. 93–1, at 2.) On August 18, 2015, Eduardo Sotomayor Vicens, Executive Director of Caribbean Medical Center, answered the following on behalf of Defendants: "[n]one exist that I'm aware of." Id. at 5. Both parties agree that "the existence of a ER incident report was surprisingly revealed by Dr. Rosario at this deposition" which took place on February 10, 2017. (Docket No. 91, at 2; see also Docket No. 102, at 2.) As stated previously, the ER report was eventually produced by Defendants on March 20, 2017. (Docket No. 93, at 2.) In other words, the document was produced by Defendants forty days after they became aware of its existence and twenty days prior to the discovery dead-

line. Given this context, the Court deems that Defendants complied with their duty under Rule 26(e) to correct their previous incorrect response in a timely manner. Since it is clear that Defendants complied with Rules 26(a) and (e) as to the ER report, there is no merit to Plaintiff's contention that the document be excluded under Rule 37(c)(1).

■ Plaintiff also seeks to bar the testimony of attorney Patricia De Frias, Risk Director at Caribbean Medical Center because she was announced as a fact witness after the discovery deadline. (Docket No. 93, at 1–2.) Defendants counter that "[t]he inclusion of Attorney De Frias as a witness was a direct result of plaintiff's discovery request and her testimony will go only as a representative of Caribbean Medical Center to authenticate the [ER report]." (Docket No. 102 at 3.)[1] Plaintiff has provided no legal basis, other than Rule 37, to justify the exclusion of Attorney De Frias' testimony. However, similar to the ER report, the disclosure of Attorney De Frias as a witness complied with the requirements of Rule 26(a) and (e), as a trial date has not yet been set and the purpose of her testimony only arose after Dr. Rosario's disclosure of the existence of the ER report. Plaintiff's motion in limine at Docket No. 93 is thus **DENIED.**[2]

B. Motion in limine at Docket No. 94: Police Report and Autopsy Report

The parties have stipulated that Mr. Ares–Pérez was impacted by an automobile while driving his bicycle on August 14, 2013 and suffered severe injuries as a result. (Docket No. 75, at 21 ¶ 5.) Mr. Ares–Pérez was transported via ambulance to Caribbean Medical Center and his condition was deemed "urgent". Id. ¶¶ 6, 9. Plaintiff claims that the treatment that Mr. Ares–Pérez received at Caribbean Medical Center caused his brother's death. (Docket No. 23, ¶ 6.1.) Defendants, on the other hand, argue that they complied with the duty of care that they owed Mr. Ares–Pérez and that, "there was nothing to be done by the nursing staff or other medical personnel to prevent [his death]." (Docket No. 75, at 10.)

■ As part of their defense and in support of their argument that they did not cause Mr. Ares–Pérez's death (and thus Plaintiff's emotional damages), Defendants seek to introduce into evidence at trial a copy of "police report 201312199 prepared by Officer Emmanuel Melendez Santos" ("Police Report"). (Docket Nos. 75, at 23 ¶ 6; 103, at 6.) Plaintiff's first argument for excluding the Police Report is that the it tends to establish that Mr. Ares–Pérez caused the accident which led him to seek medical treatment, and that this information is irrelevant to the case at bar since it has nothing to do with the adequacy of the medical care which he received. (Docket No. 94, at 6.)

■ Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Given the severity of the injuries suffered by Mr. Ares–Pérez as a result of the

---

1. According to Defendants, it was Attorney De Frias who found the ER report "after a long and arduous search" subsequent to Dr. Rosario's revelation of its existence. Docket No. 102 at 2. This action is exactly what Rule 26 promotes.

2. The Court's ruling is strictly limited to Plaintiff's arguments to exclude the ER report for failure to disclose under Federal Rule of Civil Procedure 37(c)(1). As the issue has not been raised by the parties, the Court does not address the admissibility of the ER report under the Federal Rules of Evidence, even though Defendants, in their response to Plaintiff's motion in limine, cursorily argued that the same is admissible under Federal Rule of Evidence 803(6)(B).

accident, a jury may find that the details of the accident included in the Police Report may make it more or less probable that Defendants caused Mr. Ares–Pérez's death. In a medical malpractice suit such as this, a plaintiff must establish a sufficient causal nexus between the breach of duty of care *and the harm* that was suffered by the patient. See Rosa–Rivera v. Dorado Health, Inc., 787 F.3d 614, 620–21 (1st Cir. 2015). The Police Report is thus relevant under Federal Rule of Evidence 401, as it may tend to make more or less probable whether Defendants' alleged breach of duty of care caused Mr. Ares–Pérez's death and thus Plaintiff's emotional damages.

Relevant evidence may nonetheless be inadmissible if its probative value is outweighed by its unfair prejudicial value, confusion of the issues or risk of misleading the jury. FED. R. EVID. 403. Plaintiff, however, has not persuaded the Court as to the unfair prejudicial value of the Police Report, or how it would confuse the issues or mislead the jury. Plaintiff cites some state court cases in which it has been held that "a patient's negligence that provides only the occasion for medical treatment may not be compared to that of a negligent physician." (Docket No. 94, at 7). However, none of the authorities cited address the admissibility of evidence, but rather whether a physician may avoid or reduce liability for the damages caused by his malpractice, therefore they are inapposite to the present controversy. In this case, where the cause of Mr. Ares–Pérez's death is disputed (and thus of Plaintiff's emotional damages), Plaintiff has failed to state any valid argument for exclusion of the Police Report under Rule 403. On the contrary, it seems that it would be unduly prejudicial to Defendants to be barred from offering evidence in support of their theory of what caused Mr. Ares–Pérez's death and be constrained to the limited stipulations reached by the parties regarding his condition after the accident, (see Docket No. 75, at 20–22) as Plaintiff urges the Court to do. (Docket No. 94, at 10.)

■ Plaintiff also seeks to exclude Mr. Ares–Pérez's autopsy report ("Autopsy Report") under Rule 403 because it is "cumulative, to say the least" and that evidence of his multiple "external and internal lesions is likely to sway and confuse the jurors." Id. at 9. Plaintiff's argument is unavailing, as one of the central issues the jury will determine is whether Mr. Ares–Pérez's death was the inevitable result of the injuries that he suffered as a result of the accident, or whether it was preventable had he received appropriate medical treatment from Defendants. Evidence of the nature and extent of Mr. Ares–Pérez's external and internal injuries upon his death, and after he received medical treatment from Defendants, is undoubtedly central to this determination.

Plaintiff also claims that the Autopsy Report is cumulative evidence, as the Defendants also seek to introduce a copy of Mr. Ares–Pérez's death certificate which "states 'severe body trauma' as [his] immediate cause of death." Id. The limited extent of the death certificate's findings, as well as the fact that it was prepared by Dr. Rosario, whereas the Autopsy Report was prepared by a pathologist with no relation to the parties in this case is sufficient to show that Plaintiff's contention is without merit. Plaintiff has thus failed to show how the Autopsy Report's unquestionable probative value is substantially outweighed by any undue prejudicial effect that it may have on the jury. Accordingly, the Court **DENIES** Plaintiff's motion in limine at Docket No 94.

C. Motion in limine at Docket No. 95: Settlement Agreement between Plaintiff and Dr. Rosario

■ Plaintiff further seeks to exclude "[t]he mention in any way during trial" of

the confidential settlement agreement struck between him and Dr. Rosario ("Settlement Agreement") given that it "does not release the remaining defendants, CMC and its insurer ... [and] is totally irrelevant and could cause unfair prejudice, confusion and mislead[ ] the jury." (Docket No. 95, at 3.) Plaintiff thus seeks to exclude the Settlement Agreement under Federal Rules of Evidence 401 and 403. Id. at 2. Defendants opposed Plaintiff's request, arguing that "[t]he Ju[r]y needs to be made aware of this information so that, when the times comes for them to impose percentages of responsibility, if any, they can do so with full knowledge of the issues at hand." (Docket No. 104, at 2.) They further argue that the Settlement Agreement should be admitted under Rule 408(b).

 Federal Rule of Evidence 408 reads as follows:

(a) **Prohibited Uses.** Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

. . . .

(b) **Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

FED. R. EVID. 408. The "critical inquiry" in considering whether a settlement agreement is admissible under this rule is the purpose for which it is being presented. McInnis v. A.M.F., Inc., 765 F.2d 240, 248 (1st Cir. 1985). The text of the rule is clear in that the agreement may not be used for proving or disputing "the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]" FED. R. EVID. 408. This includes "settlements between plaintiffs and third party joint tortfeasors or former co-defendants". McInnis, 765 F.2d at 247; see also Portugues–Santana v. Rekomdiv Int'l, 657 F.3d 56, 63 (1st Cir. 2011).

As Defendants point out, the Rule's subsection (b) specifically carves out an exception when a settlement agreement is used for other purposes, see McInnis, 765 F.2d at 248, such as proving a witness's bias. To this end, Defendants content that:

Dr. Rosario's testimony might be biased based on his agreement with plaintiffs and the fact that he no longer works at Caribbean Medical Center which makes the disclosure of the settlement relevant. It is not Caribbean Medical Center's intention that the settlement agreement be disclosed to the Jury as a means to entertain negligence in the part of Dr. Rosario, nor do we pretend to disclose the amount, so the Court will salvage this with the proper instructions.

(Docket No. 104 at 3.)

The Court finds two reasons as to why Defendant's argument fails and why the Settlement Agreement should be excluded. First, Defendants have not convincingly argued any potential bias from Dr. Rosario. The fact that he reached the agreement and no longer works for Defendants is insufficient to infer that he may be biased or would tend to offer biased testimony against them, as they have failed to argue what he may have to gain or lose from the outcome of this case. On the contrary, the Settlement Agreement may tend to show a lack of bias and may bolster his credibility, since Dr. Rosario is protected from any further liability, regardless of any negligence that a jury may attribute to him.

On the other hand, it is clear that due to the terms of the Settlement Agreement, Defendants have a clear incentive to attribute as much liability as possible to Dr. Rosario, which shows a real risk of camouflaging evidence of bias with causation evidence. See McInnis, 765 F.2d at 248 ("the defendants have argued that they introduced the release to attack McInnis' credibility rather than to disprove causation. Although this contention may have some superficial appeal, we see it as an attempt to obfuscate the critical issue. ... Such "impeachment" evidence is simply camouflaged causation evidence. ... This clearly flouts the most basic policies underlying Rule 408.")

Accordingly, Plaintiff's motion in limine at Docket No. 95 is **GRANTED** as to the Settlement Agreement.[3]

## II. Conclusion

For the reasons set forth above, Defendants' motions in limine at Docket Nos. 93 and 94 are **DENIED**. However, the motion in limine at Docket No. 95 concerning the Settlement Agreement between Plaintiff and Dr. Rosario is **GRANTED** and said evidence is hereby excluded as inadmissible.

**SO ORDERED.**

---

**3.** As Plaintiff has recognized "[i]t is a non-issue" that as a result of the Settlement Agreement he will not be able to recover from Defendants the damages caused by the percentage of negligence that a jury may ultimately attribute to Dr. Rosario. (Docket No. 95, at 4.) However, this matter will be addressed with appropriate jury instructions should the occasion for such instructions arise.